## ERNEST BROQUET v. HIRAM S. TRIPP.

1. DISEASED SHEEP; *Action for Damages; Competent Evidence.* T. bought of B. four hundred, and O. two hundred sheep out of the same flock. The sheep were diseased at the time of sale, with an infectious disease, though that fact was not known to either party to the sale. They were placed in one flock and kept by one man, the agent of both T. and O., and became so commingled that the sheep of O. could not be distinguished from those of T. with any certainty. The sheep were put in one flock because they could be kept more cheaply than in separate flocks. In an action brought by T. against B. for damages arising from a breach of warranty that the sheep sold T. were sound and healthy, *held*, not error to allow testimony to be introduced showing the general condition of all the sheep after they had been in one flock some time, it appearing that the commingling of the flock was not for the purpose of defrauding B., nor in any way concealing evidence from him, or manufacturing evidence in favor of T.

2. ——— *Diseased Lambs—Proper Damages.* Where sheep are purchased under a warranty that they are. sound and healthy, but they are diseased with an infectious disease, the injury to the lambs resulting from such disease, and which were dropped soon after the purchase, is a proper item of damages to be considered in an action upon a breach of such warranty.

3. WITNESS, *Mental Disability of; Discretion of Court.* Where a witness is offered as an expert, but it appears upon his examination that he possesses little general intelligence, it is in the discretion of the court to refuse to allow him to give opinion testimony, even though it may appear that he has had some experience in the matter about which he was offered as a witness.

4. VERDICT, *Partly Remitted; Judgment for Residue.* A court has the

power, in an action for damages, to remit a part of the verdict and enter judgment for the residue, when the party in whose favor the verdict was rendered consents to such remission.

### Error from Mitchell District Court.

ACTION brought by *Tripp* against *Broquet*, to recover damages arising from the sale of certain sheep. The plaintiff stated in his petition that on or about September 21, 1882, he bought and received of defendant two hundred sheep, for which he paid $650; that on or about February 1, 1883, he bought and received of defendant two hundred other sheep, for which he paid $700, and that defendant warranted all of said sheep to be sound and free from disease. Plaintiff averred that all of the sheep were unsound and diseased when bought by him as aforesaid, and became of no use to him; that more than one hundred of the first flock, and more than one hundred and fifty of the second flock, died by reason of said unsoundness and disease; that he had incurred great expense in feeding, keeping and caring for said sheep, and in providing medicines for them, and had suffered great loss because said sheep communicated disease to his other sheep, by reason whereof his other sheep died. Plaintiff averred that in case of the flock first purchased as aforesaid he had sustained damages in the sum of $950, and in the case of the second flock, damages amounting to $1,050.

The defendant answered, denying that he gave any warranty of said sheep, and claiming upon a certain promissory note for $500 and interest, given him by plaintiff. The plaintiff filed a reply. Trial by jury at the June Term, 1885.

It appears from the evidence that *Tripp* bought the first two hundred sheep through his agent, one Ramage, and that the plaintiff, being a commercial traveler, did not give them any personal attention whatever, but put them in charge of his said agent; that in February, 1883, plaintiff bought two hundred more sheep of defendant, and that one Ovelman, a traveling-man, bought of defendant the same number of sheep out of the same flock; that afterward all these sheep bought

in February were placed in the care of Ramage, and turned in with the sheep bought in the previous September; that Ramage marked the first two hundred sheep in order to distinguish them from those he received in February. It also appears from the evidence that the sheep when bought seemed sound and healthy, but soon after showed signs of disease, to wit, the scab; and that the defendant did not know at the time of the sale that they were diseased.

A verdict was rendered for plaintiff for $850. Defendant moved for a new trial, which motion the court overruled, upon the condition that the plaintiff would remit $350 of the verdict. This remission was agreed to. Judgment for plaintiff for $500 and costs. The defendant, *Broquet*, brings the case here.

*L. J. Crans*, for plaintiff in error.

*A. H. Ellis*, for defendant in error.

Opinion by HOLT, C.: Plaintiff in error, defendant below, makes several assignments of error. The first one that we wish to consider is, that the court erred in admitting testimony, over the objection of the defendant, tending to show the condition of the entire flock of sheep kept by Ramage, including the two hundred purchased by Ovelman in February, 1883. He claims that unless the sheep of the plaintiff were distinguished from those of Ovelman, there could be no testimony introduced showing that they were diseased. We think that this objection is not well taken. The testimony of the witnesses was that they were all of 1. Diseased sheep; action for damages; competent evidence. the same quality of sheep purchased from Broquet, and came from the same flock owned by him, and that it was impossible to tell which sheep belonged to either purchaser, except the two hundred that were marked by Ramage. If the claim of the defendant is correct, neither Ovelman nor the plaintiff could have recovered any damages arising from the breach of the defendant's warranty of the sheep bought in February. There was no confusion or com-

mingling of the sheep by the plaintiff or his agent for the purpose of concealing the facts from or manufacturing evidence against Broquet, or in any manner defrauding him. The flocks were put together simply for the reason that they could be more easily cared for in one flock than in separate flocks. The court moreover, in its instructions to the jury, cautioned them against allowing to plaintiff in this case damages which Ovelman may have sustained because his sheep were diseased, in language so strong that the defendant, at least, can have no grounds for complaint.

Defendant further complains that there was testimony introduced, over his objection, tending to show that the lambs were diseased; and claims that the damage to the lambs was not a proper item to be considered under the warranty of the defendant. The sheep purchased by the plaintiff were almost entirely ewes, and were bought for the purpose of breeding. If the lambs had died when they were dropped, by reason of the disease of the ewes, that would certainly be an item of damages; or if the ewes at the time of parturition had died by reason of weakness occasioned by the disease, that also would be a matter to be investigated and allowed in the claim for damages. If the lambs naturally and necessarily became diseased by running with the flock of diseased sheep, as it appears from the evidence in this case they did, we believe that fact could properly be considered in ascertaining the amount of damages to be recovered.

2. Diseased lambs —proper damages.

Another assignment of error is, that the court permitted one Hill to testify as an expert. There was no substantial error in the admission of his evidence. He said that the sheep were diseased, and described how they appeared, a description that any person who had examined the sheep, whether he was an expert or had any skill at all, could have easily seen and described. The testimony he gave, claimed by defendant to be expert testimony, was that the sheep were diseased. The testimony of other witnesses, showing that they were diseased, was overwhelming, and we presume that a witness, not an ex-

pert, could say that an animal was diseased if he did not attempt to describe the nature and effects of such disease.

Defendant further claims that a witness which he sought to introduce, Witt by name, should have been allowed to testify as an expert. But his examination shows that he was unskilled, so far at least as the use of the English language is concerned. He testified that the disease called "scab" was caused by an insect, which was not visible to the naked eye, but which he had examined often through the telescope; and then he corrected himself by saying that he had looked at it through the telephone. Other parts of his testimony indicate about the same degree of general intelligence. The ability or disability of a witness to testify under the legal requirements for the admission of opinion evidence is a matter often most conveniently and satisfactorily determined by a personal examination of the witness, and we presume that the court, having this witness before it, and perceiving his mental caliber, was justified in excluding his testimony. The questions propounded to him were allowed to be answered fully by other witnesses produced by the defendant, whom the court thought were qualified as experts. Therefore the defendant could not have been materially prejudiced by the court's refusal to allow him to testify.

3. Witness, mental disability of; discretion of court.

The defendant complains further, that the court erred in refusing number sixteen of the instructions asked. The record does not show that there was any exception to the refusal to give such instruction. The defendant still further complains that the court, as a condition for overruling his motion for a new trial, remitted three hundred and fifty dollars of the verdict. We think it had ample authority to do so. If the plaintiff consented thereto, the defendant ought not to complain, as the reduction was in his favor. It seems to be well settled that, in actions for damages of this kind, an excess in the verdict, above what the evidence might justify or satisfactorily establish, may, with the consent of the party in whose favor the verdict was given, be remitted, and judgment entered for the residue. The

4. Verdict, partly remitted; judgment for residue.

exercise of such power is sanctioned on the theory that the excess arises either from error of law, misapprehension of the facts, or error in computation by the jury, and that such error does not permeate the entire verdict, and therefore it is competent to correct it. When the assent of the party is obtained, whom alone the correction would prejudice, the other party has nothing of which to complain, such order of the court being in his favor. (*Pendleton St. Rld. Co. v. Raham*, 22 Ohio St. 446; *Brockman v. Berryhill*, 16 Iowa, 183; *Dawson v. Wisner*, 11 id. 6; *Craig v. Cook*, 23 Minn. 232; *Corcoran v. Harran*, 55 Wis. 121.)

It is recommended that the judgment of the court below be affirmed.

By the Court: It is so ordered.

All the Justices concurring.