# HOBBS v. SMITH *et al.*

### No. 710.　Opinion Filed January 10, 1911.

1. **APPEAL AND ERROR—Evidence—Sufficiency.** Where there is a conflict in the testimony introduced on the trial of an action, this court will not reverse the judgment of the trial court if the evidence of the successful party, when considered by itself, is sufficient to sustain the verdict.

2. **TORTS—Contracts—Violation—Action in Tort.** Where the relation between the parties to an action has been established by contract, express or implied, if the law imposes certain duties because of the existence of the relationship created, a violation of the contract obligations may be waived and an action in tort maintained for any violation of such imposed duties.

3. **DAMAGES—Sale of Diseased Animals—Exemplary Damages.** In an action in which it is alleged that defendant by fraud and deceit induced plaintiff to purchase certain hogs which at that time the defendant well knew were infected with cholera, it is not error, under the provisions of section 2887, Comp. Laws of Okla. 1909, to instruct the jury that if it found from the evidence that the defendant, knowing said hogs to be diseased with the cholera, falsely and wilfully represented to plaintiffs that the hogs sold and delivered were sound in health and condition and good stock hogs, and that plaintiffs had not examined them prior to the purchase, but relied upon such representations and such representations were false, and that said hogs were infected with cholera, that the defendant was liable to the plaintiffs, in addition to the amount of actual damages which had been sustained, a reasonable sum as exemplary damages for sake of example and punishment for the wrong done.

4. **NEW TRIAL—Grounds—Newly Discovered Evidence—Diligence.** Where from the face of a motion for new trial on the ground of newly discovered evidence, as well as from all of the facts in the case, it is manifest that movant had failed to exercise reasonable diligence to secure the alleged newly discovered evidence in time for the trial, and which it is reasonably apparent could have been secured had proper diligence been exercised, the denial of a motion for new trial based on this ground is not error.

(Syllabus by the Court.)

*Error from District Court, Kingfisher County; A. H. Huston, Judge.*

Action by T. C. Smith and J. A. Blackford, as partners, against Lyman Hobbs. Judgment for plaintiffs, and defendant brings error. Affirmed.

*F. L. Boynton* and *Robberts & Curran,* for plaintiff in error.
*Bradley & Bradley,* for defendants in error.

DUNN, O. J.    This case presents error from the district
court of Kingfisher county.   October 7, 1907, defendants in error
as plaintiffs filed their petition in the district court to recover
of and from defendant, plaintiff in error in this court, actual
damages in the amount of $642.37, and exemplary damages in the
sum of $1,000.00, which said damages are alleged to have grown
out of the sale by defendant to plaintiffs of hogs infected with
cholera.   It is alleged in the petition that the plaintiffs were part-
ners engaged in the business of buying, selling, and shipping hogs
at the village of Dover, Kingfisher county, Oklahoma Territory.
That on or about March 10, 1907, the defendant represented to
and informed plaintiffs that he had some good stock hogs in sound
health and condition, and proposed to sell and deliver the same to
plaintiffs at their stock yards in the village of Dover for the market
price for such hogs.   That the plaintiffs had not at that time seen
the hogs, but relying upon the representation of defendant, and
believing the same to be true, agreed at that time to buy from him
about forty of such hogs at an agreed price per pound.   That
thereafter the defendant sent and delivered to plaintiffs at their
stock yards twenty-seven hogs, for which plaintiffs paid in accord-
ance with their contract.   That after such payment the hogs pur-
chased appeared to be sick, and plaintiffs were then informed that
defendant's hogs had hog cholera and that many of them had died
of cholera a few days preceding the delivery.   That the defendant
sent another load of hogs to plaintiff, all of which were diseased
and sick, three being then in a dying condition.   That plaintiff
refused to receive and accept the same.   That the hogs which were
sold and delivered by the defendant to plaintiffs were diseased
with hog cholera at the time of said sale and delivery, and that
defendant well knew that such hogs had hog cholera at that time.
That the hogs so purchased by plaintiffs communicated hog cholera
to the other hogs of plaintiffs, a number of which died.   Then
follows a number of items of damage in the nature of expense in-

curred by plaintiffs for caring for the diseased animals and renovating their premises.   To this petition defendants filed answer consisting of a general denial and a specific denial that at the time of the sale and delivery of said hogs the same were infected with the disease of hog cholera or that they were diseased, but were good, sound, healthy stock hogs, in good condition, and denied that they were responsible for the spread of any disease of any character to the other hogs owned by plaintiffs, and that plaintiffs' were experienced dealers in hogs and were able to examine hogs purchased by them, and upon such examination were fully able to ascertain whether said hogs were diseased or not.   That at the time of the delivery to plaintiffs they inspected and examined the hogs and knew that they were not so infected.   For reply plaintiffs denied the averments of the answer and again alleged that the hogs were affected and diseased with a contagious and infectious disease and were not good, sound, and healthy hogs in good condition at the time of the purchase.   Upon the issues thus made up, the cause was tried to a jury with instructions under which they returned a verdict embracing both actual and exemplary damages in the amount of $800.   On the filing of a motion for new trial, plaintiffs remitted $100, whereupon the motion for new trial was denied, and defendant has brought the cause regularly to this court for review.

A number of questions of law are presented by counsel, but it is manifest that the chief complaint is that the jury, on the evidence, returned a verdict for plaintiffs when it should have been for the defendant.   The evidence of the parties was in direct conflict and the question for the jury to determine was, on which side lay the truth, and to which side credit should be given.   An examination of the abstract of the evidence, and also of the record itself, discloses that, in addition to the direct evidence, there was a considerable amount of circumstantial and inferential testimony which was necessary for the consideration of the jury, and counsel for plaintiff in error insist that only one conclusion can result from a proper consideration of this evidence, while counsel for

defendants in error with equal vigor insist that the conclusion reached by the jury was the correct one. The verdict was challenged on the motion for new trial before the trial judge, whose duty in such cases is set forth by this court in the case of *Hogan v. Bailey, ante,* 110 Pac. 890. We therein noted that the function of the trial court was higher than to act merely as a moderator or umpire between contending adversaries before a jury; that, in addition to seeing that the conduct of the trial was fair and that the litigants each had a fair opportunity to present his cause and to have the facts weighed in the light of proper instructions, it was his duty, after the jury had returned its verdict, where the justness of the same was challenged, to carefully weigh the entire matter and, unless he was satisfied that the verdict was responsive to the demands of justice, to set the same aside and grant a new trial; and that, unless the conclusion reached by the jury met the affirmative, considerate approval of the conscience and mind of the court, it should not, when challenged, be permitted to stand. We must assume in this case that on the presentation of the motion for new trial this duty was performed by the learned trial judge who presided. So that the verdict determining the facts and awarding judgment in this case comes to us with the conscientious sanction and approval of the trial court. It is the duty of the trial court to be satisfied that no injustice has been done, and if not satisfied on this point, he should set the verdict aside and grant a new trial. But, in order for this court to set aside the verdict, it must be made affirmatively to appear that injustice has been done. There is evidence in this record sufficient, if credited, to support the theory of either party, and in such cases as this, notwithstanding the vigorous insistence of counsel that the evidence of the defendant was true and should have met with the approval of the jury, we are constrained to and must hold that the verdict, not lacking evidence to reasonably sustain it, must stand. Speaking to the question of the duty of courts and juries, Judge Caldwell, in the case of *Gulf, C. & S. F. Ry. Co. v. Ellis,* 54 Fed. 481, 4 C. C. A., 454, said:

"In common-law actions tried to a jury this court cannot review or retry the facts. If there is any evidence, direct or circumstantial, fairly tending to support the verdict, it must stand. Every presumption is in its favor, and all doubts must be resolved in its favor. This court will not weigh nor balance the evidence. * * * It was because the people thought the judges were poor judges of the facts that they committed their decision to a jury. Undoubtedly juries sometimes err in deciding the facts, but their errors are trifling in number and extent compared with the errors of the judges in deciding the law. The numerous appellate courts of the country are engaged principally in correcting their own and the errors of other courts on questions of law. The mistakes of juries take up very little space, comparatively, in the enormous volume of law reports with which the country is being deluged. In their deliberations upon the facts of the case they are at liberty to exercise their common sense and practical experience and knowledge of human affairs, untrammeled by the excessive subtility, over-refinement, and the hair-splitting of the schoolmen which have crept into the administration of the law by the courts to such an extent as to sometimes bring it into reproach. It is not by such modes of reasoning that the soundness of a verdict of a jury is to be tested. It is not, therefore, any ground for disturbing the verdict of a jury that the court would not have rendered such a verdict. It must appear that all reasonable men would agree that it was not supported by the evidence, and should be annulled. The constitutional right of the citizen to have the facts of his case tried by a jury must not be encroached upon by the courts under any pretext."

It must also be conceded that the judge and the jury which hear the evidence and try the case are in a far better position to ascertain the truth and to discover falsehood than any court, which sees the trial only from the record. The language spread upon the written or printed page often in a weak way only conveys the actual strength or weakness of the testimony given by a witness, and when, as in this case, there is a vast amount of direct evidence given by a great number of witnesses, the weighing and determining of which is complicated by circumstantial testimony and deductions and inferences to be drawn therefrom, it is apparent that this court, if it were to enter upon a consideration thereof with a

view of setting aside the conclusion of the trial court, would enter a domain where the correctness of its conclusion would or could be scarcely more than mere conjecture.

For the foregoing reasons, the established rule is that where there is a conflict in the testimony, the appellate court will not reverse the judgment of the trial court where the evidence of the successful party, when considered by itself, is sufficient to sustain the verdict.

Counsel take exception to the giving and refusing by the court of certain instructions. It will be noted that the petition charges that the hogs which were sold and delivered by the defendant to plaintiffs were diseased with hog cholera at the time of the sale and delivery, which fact was well known to the defendant at the time. Evidence was offered on the part of plaintiffs which, if believed by the jury, established this charge, and the court, in addition to the general instructions, gave the following:

"6. The burden is on the plaintiff to prove by a preponderance of the evidence not only that the animals sold were infected with a contagious or infectious disease known as cholera, but also that the defendant knew at the time of the selling and delivery of the property that the animals had such disease, or knew facts and circumstances which would cause him to believe that his hogs were so infected and liable to communicate the disease to plaintiffs' hogs and to die therefrom, and that they did die therefrom and communicated it to other hogs of plaintiffs, so that they died therefrom."

"3. If you find from a preponderance of the evidence that defendant sold to the plaintiffs hogs which the defendant knew were infected with cholera on or about the date stated, and on receipt of such hogs the plaintiffs mingled the same with their other hogs which were healthy, without knowledge of the diseased condition of the hogs so delivered, and that the hogs delivered communicated such disease to the plaintiffs' other hogs from which they lost numbers of the delivered hogs and of their own also, then the plaintiffs would be entitled to recover as damages from the defendant, the value of the hogs that died, together with such expenses as they were to, in doctoring and caring for such hogs, preventing the spread of the contagion, disinfecting their

pens after the disease had disappeared, and the value of their own services rendered in doing those things caused proximately by the presence of such disease among their hogs by the communication thereof by defendant's hogs."

"5. If you find from the evidence that the hogs sold by defendant to plaintiffs were infected with cholera, but not to an extent to be perceived by either plaintiffs or defendant, and that such disease arose from infection or contagion communicated by hogs which defendant had but recently purchased in the open market, which were in an apparently healthy state which continued to a time subsequent to the sale of exposed hogs to plaintiffs, and that defendant honestly supposed his hogs to be free from cholera, then you should find for the defendant."

The foregoing instructions, in our judgment, place as high a burden upon the plaintiffs as defendant could exact. Certainly if the plaintiffs established that the defendant knew at the time that he sold and delivered to them the hogs that they were infected with cholera, then he would be liable for all resulting damages. Such an act is made a crime under our statute. Section 217, Comp. Laws of Okla. 1909, which reads as follows:

"It shall be unlawful for any person to sell or otherwise dispose of any live swine that is infected with cholera or any other contagious diseases or to drive any such swine on the public highways, after any such person or persons have received knowledge of any such contagious diseases, and any person violating the provisions of this act shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined in any sum not to exceed $50 or be imprisoned in the county jail not more than 30 days."

It will be seen that, under the instruction last above noted, the jury were told to find for the defendant if the hogs, although infected with cholera, were not so affected to an extent to be perceived by either party, and if the defendant honestly supposed his hogs to be free from cholera, the verdict should be for him. This, it seems to us, is all that defendant could demand. When the rules laid down in the foregoing instructions are taken and considered together and the jury, after hearing all of the evidence, found that these requirements had been met, there can be no doubt

about the correctness of a verdict making defendant liable for all the damages flowing from his acts. All of the authorities support this rule. *Skinn et al. v. Reutter et al.*, 135 Mich. 57, 63 L. R. A. 743; *Broquet v. Tripp*, 36 Kan. 700; *Marsh v. Webber*, 13 Minn. 99; *Rose v. Wallace*, 11 Ind. 112; *Knox v. Wible*, 73 Ind. 233; *Sherrod et al. v. Langdon et al.*, 21 Iowa, 518; *O'Hara v. Morris*, 87 Ill. App. 393; *Mullett v. Mason*, 29 Vict. 559; *Greenby v. Brooks*, 11 Ky. Law Rep. 138.

But it is insisted that the court erred in submitting the question of exemplary damages prayed for in the petition to the jury, the claim being made that this case was not one wherein exemplary damages could be allowed. It will be observed that the relationship between the parties grew out of a contract wherein plaintiffs bought and defendant sold the hogs. Our statute on exemplary damages, section 2887, Comp. Laws of Okla. 1909, reads that:

"In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant."

The foregoing statute fixing liability for exemplary damages does so upon those obligations not arising from contract, and is in harmony with the common law on this subject. 3 Page on Contracts, § 1572; 1 Joyce on Damages, § 111; 2 Sedgwick on Damages (8th Ed.) chap. 20; *Snow et al. v. Grace*, 25 Ark. 570; *Richardson v. Wilmington, etc., Ry. Co.*, 126 N. C. 100; *Ryder v. Thayer et al.*, 3 La. Ann. 149; *Ford v. Ferguson*, 120 Ga. 708. And, although there are some few cases not in harmony, the rule, under the great weight of authority, is well established that where a breach of contract is permeated with tort, the injured person may elect to waive the contract and recover in tort; or, differently stated, although the relation between the parties may have been established by contract, express or implied, if the law imposes certain duties because of the existence of that relation, the con-

tract obligation may be waived and an action in tort maintained
for the violation of such imposed duties. 1 Ency. L. & P., p.
1068, and cases cited under note 18; 1 Viner's Abridgment, 276;
*Mobile Life Ins. Co. v. Randall,* 74 Ala. 170; *Dresser v. Mercan-
tile Trust Co. et al.,* 108 N. Y. Suppl. 577; *Church v. Anti-Kal-
somine Co.,* 118 Mich. 219; *Emigh v. Pittsburgh, Ft. W. & C. R.
Co.,* 4 Bliss, 114, 8 Fed. Cas., p. 650, Case No. 4,449; *Nevin v.
Pullman Palace Car Co.,* 106 Ill. 222; *Zell v. Arnold,* 2 Penn. &
Watts (Pa.) 292; *Stock v. City of Boston,* 149 Mass. 410; *Kin-
nare v. City of Chicago et al.,* 70 Ill. App. 106; *Mulvey v. Staab
& Co.,* 4 New Mex. 172; *Flint & Wallin Mfg. Co. v. Beckett,* 167
Ind. 491; *Humiston v. Smith,* 22 Conn. 19; *Hooks v. Fitzenrieter,*
76 Tex. 277; *Sheldon v. Steamship Uncle Sam,* 18 Cal. 527, 79
Am. Dec. 193.

It is manifest in the case at bar that the defendant owed to
plaintiffs the duty, if he knew that his hogs were infected with
cholera, not to sell them to plaintiffs so that they would come in
contact with plaintiffs' hogs, and thus infect them with the
disease. Plaintiffs were hog buyers and to sell and deliver to them
hogs known to be diseased with cholera, an infectious, contagious,
deadly disease to these animals, was not only a violation of their
contract, but was a tort of the highest character. Plaintiffs did
not contract to buy diseased hogs, and defendant did not represent
to them that he was selling that class and character of stock, but
sound, healthy hogs: herein was a breach of the contract, and the
common-law obligation not to afflict plaintiffs to their damage
with the diseased animals was the common-law obligation owed
by defendant to plaintiffs, which under the finding of the jury he
violated. Under these conditions, there can be. no doubt that
plaintiffs were entitled to bring their action for the tort, under
which damages of a more extended character could be recovered
than from the breach of the contract obligation. The question
is raised, however, that although under the pleading the action
sounds in tort, and not in contract, did the court err in giving the

following instruction, allowing the jury to find exemplary damages in accordance with the prayer of the petition:

"4. If you find from the evidence that the defendant, knowing said hogs to be diseased with the cholera, falsely and wilfully represented to plaintiffs that the hogs sold and delivered ·were sound in health and condition and good stock hogs, and that the plaintiffs had not examined them prior to the purchase, but relied upon such representations, and that such representations were false, and that said hogs were infected with cholera, then you are instructed that for such acts of the defendant he is liable to the plaintiff, in addition to the amount of the actual damages which he has sustained, a reasonable sum as exemplary damages for the sake of example, and as a punishment for the wrong done."

. The facts averred in .plaintiffs' petition are sufficient to sup-port the issue that the defendant was guilty of fraud and deceit in the sale of the hogs to them. It is therein charged that the hogs "which had been sold and delivered by defendant to plaintiffs, as aforesaid, were diseased with hog cholera at the time of such sale and delivery, and the defendant well knew that such hogs had the hog cholera at the time of such sale and delivery." On the sufficiency of this allegation, see 8 Ency. P. & P., pp. 897, 898, and cases cited under note 5; *Edick v. Crim,* 10 Barb. 445; *Zabriskie v. Smith,* 13 N. Y. 322—especially where the allegations of the petition are not challenged. *Robbins v. Barton Bros.,* 50 Kan. 120.

. Therefore, under the statute above noted (sec. 2887), the jury, on finding fraud on the part of defendant, was justified in returning a verdict for exemplary damages. It is to be noted that, under the requirements of the instruction, the jury were to return a verdict for exemplary damages only if they found from the evidence that the defendant, knowing said hogs to be diseased with cholera, falsely and wilfully represented to plaintiffs that the hogs sold and delivered· were sound in health and condition and were good stock hogs, and that the plaintiffs had not examined them prior to the purchase, but had relied upon such representations, and that the same were false, and that the hogs were in-

·fected with cholera. There is no error in this instruction, and the amount of damages was not, under the proof, excessive, and, in our judgment, the instruction and verdict rendered under it, when the evidence supporting the same is considered, are without error.

In support of a motion for new trial, defendant filed certain affidavits alleging newly discovered evidence, accompanying which were the affidavits of some of the witnesses for plaintiffs who testified on the trial. The defendant in his affidavit set up that "not knowing who the witnesses were and having no way of learning who plaintiffs' witnesses were prior to the day set for the trial of this cause, defendant was not or could not be prepared to refute some of the testimony given in this cause by the witnesses of the plaintiffs, which testimony was false and untrue. * * * That this affiant has since the trial of said cause closely investigated all the facts pertaining to the health of the said hogs, and particularly the time that any disease manifested itself in any hogs kept upon his premises, and none of the witnesses testified as to seeing any diseased hogs upon defendant's premises earlier than the 18th of March, after said hogs were delivered to said Smith & Blackford on the 12th and 14th of March. * * * That this defendant has been, since the trial of this cause, informed that the plaintiffs Smith & Blackford lost a number of hogs in their pens at Dover from disease in the month of February, 1907, long prior to the time that this defendant delivered any hogs to them. That this fact is known to a number of persons in and around Dover, and that this defendant can, upon a new trial of this cause, produce a number of witnesses who will testify to said facts." And in another affidavit, it having been made to appear near the conclusion of the case that a storm or cold wave passed over the country on or about March 8th or 9th, 1907, which, it is contended, caused in the hogs of plaintiffs contagious pneumonia, the defendant sought to show that he did not know of or recollect said storm at the time of the trial. This court, in the case of *McCants v. Thompson, ante,* in an opinion handed down at this

term of court, speaking of the requirements of a motion for new trial on newly discovered evidence, laid down the following rule:

"To entitle the party to a new trial on the ground of newly discovered evidence, the motion should set forth the names of the witnesses who would testify to the alleged new matter and be accompanied by affidavit and facts to show diligence to secure said witnesses and that the evidence by reasonable diligence could not have been discovered before the trial. *Huster v. Wynn,* 8 Okla. 569, 58 Pac. 736; *B. S. Flersheim Mer. Co. v. Gillespie,* 14 Okla. 143. Such evidence must not be cumulative, merely. *McLeod v. Shelly Mfg. & Imp. Co.,* 108 Ala. 81, 19 So. 326; *Huster v. Wynn, supra.* It must appear, further, that due diligence had been exercised by the movant to discover the same in time and negative fault on the part of such movant. *McLeod v. Shelly Mfg. & Imp. Co., supra; Jernigan v. Clark,* 134 Ala. 313, 32 So. 686. General averments as to due diligence are not sufficient. The facts should be set out and negative fault on the part of movant. *McLeod v. Shelly Mfg. & Imp. Co., supra; Simpson v. Golden,* 114 Ala. 336; *The Bayonne Knife Co. v. Umbenhauer,* 107 Ala. 496, 18 So. 175. A new trial should not be granted on newly discovered evidence unless such evidence, if before the jury, ought to have changed the verdict. *Schlaff v. Louisville & Nashville R. R. Co.,* 100 Ala. 377, 14 So. 105."

In our judgment, the showing made by the defendant does not meet these requirements, and hence the trial court did not err in denying the motion for a new trial. To speak further, all of the important witnesses called to testify in the case on the part of plaintiffs lived within the county and in the immediate vicinity of Dover, or Hennessey, where these parties lived, some of whom had worked for the defendant before, at, and after the time of the sale of the hogs. Plaintiffs' petition, on which the case is tried, is unusually full in setting up in detail the wrongs of which they complain, and it is incredible that defendant should not, from the very nature of the situation, know on whom it was possible for plaintiffs to rely to establish the same. Necessarily the facts set forth could be established by those only who had come in contact with the defendant or the plaintiffs and the diseased

hogs. The range of this inquiry was not and could not be extensive, and, with the slightest degree of diligence, it occurs to us, the defendant could have ascertained the witnesses upon whom plaintiffs relied. It does not appear from these affidavits, aside from some general statements and conclusions, that he asked the plaintiffs or anyone else who lived in and around and were in close contact with the transaction and who would be most likely to know of the facts. It is to be noted that it was since the trial of the cause that the defendant closely investigated all of the facts closely pertaining to the health of the hogs involved, and that it was since the trial of the cause that defendant had been informed that Smith & Blackford had lost a number of hogs from disease prior to the time defendant delivered his hogs. Even remote diligence, in the face of the averments of plaintiffs' petition, should have prompted defendant, with fair consideration to the court and to the plaintiffs, to investigate these things before the trial. In the case of *Ferguson v. State,* 1 Ga. App. 841, in the consideration of a motion for a new trial on the ground of newly discovered evidence, the Court of Appeals of Georgia says:

"We have often marveled at the power of a verdict of guilty in quickening the thirst for an investigation and the faculty of discovery. * * * Motions for new trial upon the extraordinary ground of newly discovered evidence are not favored. If not regarded with suspicion, they should at least be granted with great caution. They should only be granted to avoid palpable injustice, and in order that the judgment set aside may perhaps be replaced by a different finding."

From the evidence offered on the trial and the evidence which defendant asserts he would now be able to tender in the event of a new trial, it occurs to us that he was not seriously aroused to the fact that he had a law suit until after the verdict of the jury. A party is entitled to have his day in court; both parties are entitled to this, but neither party is entitled to have more than one fair, reasonable opportunity to establish his claim or defense. To allow more, would be to protract litigation to the extent which

would preclude the administration of justice. Defendant was at home at the time of the sale of these hogs, and hence knew of the storm to establish the fact of which he now asks a new trial, it being contended that the evidence shows a diseased condition of the hogs such as would not establish cholera, but pneumonia, brought on by this storm.

"If he had forgotten it, I think that is no reason for asking for a new trial. To open the cause upon such a ground is liable to the objection that it would enable parties to prepare testimony for a second trial when they had seen the strength of their adversary's case and the weakness of their own, and thus open a door to perjury. Chief Justice Parsons says in *Bond v. Cutler,* 7 Mass. 207, a want of recollection of a fact which by due attention might have been remembered, cannot be a reasonable ground for granting a new trial; for want of recollection may always be pretended, and may be hard to be disproved." (*People ex rel. v. Superior Court of New York City,* 10 Wend. 286, 294.)

Defendant was apprised of the fact that some disease was taking hold not only of the hogs which he sold plaintiffs, but likewise those with which they came in contact. This should have prompted on his part an earnest activity to have ascertained the facts and to have prepared his defense against the averments that the disease was cholera and that he had sold these hogs to plaintiffs with the knowledge that they were infected with cholera. An investigation on his part at that time, when the evidence was more easily ascertainable than now, and when it was clearly his duty to make it, would have made available the evidence which he now seeks to put the plaintiffs to the expense of another trial to enable him to establish, and which, even were it supplied, it is by no means certain or highly probable that the result of the trial would be different.

The issues of this case have had our careful consideration; there are in our judgment no errors of law prejudicial to the rights of the defendant, and, the verdict being sustained by the

evidence, the court committed no error in denying the motion for new trial, and the judgment is, accordingly, affirmed.

All the Justices concur.