## MANUFACTURERS FINANCE CO. v. SHERMAN.

No. 13689—Opinion Filed June 10, 1924.

1. **New Trial—Newly Discovered Evidence —Lack of Diligence.**

A motion for a new trial on the ground of newly discovered evidence is properly overruled where no facts constituting diligence to have discovered such evidence in time for the trial are shown.

2. **Same.**

Record examined, and held, that party moving for a new trial on account of newly discovered evidence has not shown diligence.

3. **Appeal and Error—Discretion of Lower Court—Refusal of New Trial for Newly Discovered Evidence.**

Before a new trial will be granted on the ground of newly discovered evidence, it must be made to affirmatively appear that the new evidence would be sufficient to probably produce a different result; and in such case a certain degree of discretion is necessarily vested in the trial court, and its ruling thereon will not be interfered with on appeal, unless this court is able to see that such newly discovered evidence would probably produce a different result from that registered by the verdict of the jury.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Cherokee County; J. H. Jarman, Judge.

Action by Manufacturers Finance Company, a corporation, against I. Sherman to recover money judgment. Judgment for defendant, and plaintiff appeals. Affirmed.

Bell, Hickman & Salter, for plaintiff in error.

J. I. Coursey, for defendant in error.

Opinion by FOSTER, C. This is an appeal from an order of the district court of Cherokee county, Okla., denying and overruling a petition for a new trial on the ground of newly discovered evidence. Plaintiff in error, as plaintiff below, on January 11, 1918, sued the defendant in error, defendant below, to recover the sum of $642.66 upon two bank checks, each for $319.80, drawn by defendant in error on the Central National Bank of Tahlequah, Okla., made payable to the order of Martin Blumenfeld & Bro., one dated August 25, 1917, and the other September 25, 1917 and by him indorsed to the plaintiff in error, and on which checks the bank refused payment.

The parties will be hereinafter referred to as they appeared in the trial court.

The defendant filed his verified answer, in which he denied owing the plaintiff the sum of $642.66, or any other sum; denied that he executed or caused to be executed the said checks; denied any liability on said checks, and denied the plaintiff received the checks in due course of business.

Upon a trial of the issues before the court without the intervention of a jury, on February 13, 1919, judgment was rendered for the defendant. Thereafter, and on September 8, 1919, plaintiff filed its petition to set aside and vacate the judgment, and for a new trial on the ground of newly discovered evidence. A hearing was had on this petition on February 25, 1922, and the petition denied. To reverse the judgment of the trial court denying its petition for a new trial, the plaintiff brings the cause regularly on appeal to this court on petition in error and case-made.

The one error assigned is that the court erred in denying plaintiff's petition for a new trial.

It appears that Martin Blumenfeld & Bro. were clothing manufacturers residing and maintaining an establishment in New York City, and for several years prior to the date on which it is alleged the two checks in controversy were drawn had sold goods to defendant, who was a merchant in the town of Tahlequah, Okla.

It also appears that the plaintiff is a corporation engaged in the business of purchasing accounts receivable from manufacturers. That a short time prior to the date

on which the checks in controversy were drawn and delivered, Blumenfeld had transferred certain accounts, which it is claimed were owing him by the defendant, to the plaintiff, and that he accordingly indorsed and delivered the checks drawn in payment of these accounts to the plaintiff, who thereupon became the owner thereof.

It further appears that about this time or soon thereafter, Blumenfeld went to Tulsa, Okla., and his business was taken over by a receiver.

The trial largely revolved around the controverted question of whether or not the defendant had executed the two checks in controversy. Upon this proposition the defendant denied positively that he had signed the checks or authorized anyone else to sign for him, and in this he appeared to be corroborated by the testimony of his son, Ben, and his daughter, Anna. There was no direct evidence introduced by the plaintiff to contradict this testimony, and the only evidence introduced by it upon the proposition was the testimony of two bankers residing at Tahlequah neither of whom were able to say whether it was the defendant's signature or not.

At the hearing on its petition for a new trial the plaintiff introduced in evidence and relied upon some 73 exhibits, consisting mainly of correspondence passing between the defendant and Martin Blumenfeld during a period of about one year prior to the date of the checks in controversy, among which was a letter dated August 22, 1917, purporting to have been signed by the defendant, in which reference was made to a check of $319 due August 25, 1917, which check it is claimed was one of the checks in controversy, and was also one of five checks for a like amount, three of which were owned by the Commercial Credit Company on which that company had instituted an action in the district court of Cherokee county, Okla., and which case by stipulation of parties is being held in abeyance in the district court of Cherokee county subject to the outcome in the case at bar on appeal to this court.

It is shown that this correspondence presumably at the time Martin Blumenfeld left New York City for Tulsa had been packed in two large wooden cases, marked "Martin Blumenfeld & Bro.," and left in storage in another building in the city of New York, and it is the claim of the plaintiff that it did not know of the existence of this correspondence until a short time after the trial on February 13, 1919.

It is contended by the plaintiff that the evidence relied upon was such that it could not have been discovered by it with due diligence before the trial, was material to the issues in the case, not cumulative, corroborative, or impeaching in its nature, and was such as to probably change the result if a new trial should be granted.

The first question presented for our consideration is, Was the evidence such that it could not have been discovered by the plaintiff with due diligence before the trial? There is no claim made, as we understand it, that Martin Blumenfeld & Bro. were hostile to the plaintiff, or that they would be interested in concealing from the plaintiff the true facts and circumstances surrounding the execution of the checks in controversy, the execution of which was denied by the defendant under oath some 12 months prior to the trial. There is an entire absence of anything in the record from which it can be concluded that the plaintiff ever made an inquiry of Blumenfeld as to the condition surrounding the execution of the checks, although Martin Blumenfeld was the one individual by whom these essential facts could be established.

It seems to us that ordinary prudence should have lead the plaintiff, upon the filing of defendant's answer denying the execution of the checks, to have made some effort to obtain the testimony of Martin Blumenfeld.

The record discloses that Mr. Mack, treasurer of the Commercial Credit Company, was present at the trial of the case on the 13th day of February, 1919, and that at that time the Commercial Credit Company, of which he was the treasurer, was thoroughly familiar with the matters that had previously transpired between it and Martin Blumenfeld, whereby it acquired the ownership of three of the five checks to which reference was made in the letter hereinabove mentioned, and on which at the time it had pending an action to recover.

Whatever may have been the relation between the plaintiff and the Commercial Credit Company, it is clear that Mr. Mack, as treasurer of the Commercial Credit Company, was vitally interested in the outcome of the trial in the instant case, and in its action against the defendant had stipulated of record to abide the outcome of the case at bar.

The Commercial Credit Company confessing familiarity with matters that had previously transpired between it and Martin Blumenfeld, and having a representative at the trial, has not shown that it had made any effort to ascertain from its assignor

the condition surrounding the execution of the checks, although it knew that the execution of the instrument was the vital point in dispute in the case.

There is nothing in the record from which it can be said that Blumenfeld was secreting himself after his failure in New York City, but should it be conceded that such was the case, there is nothing in the record to show that the plaintiff ever made any inquiry in New York of the parties succeeding him in business to ascertain his whereabouts, or any other inquiry that would have enabled it to ascertain the facts in connection with the execution of the checks in dispute.

In view of the facts that the circumstances surrounding the execution of the checks in controversy were matters peculiarly within the knowledge of Blumenfeld, the party under whom plaintiff claims title and ownership, this court cannot say that the exhibits relied upon as newly discovered evidence could not have been by the exercise of due diligence discovered before the trial, or that the trial court abused its discretion in not granting a new trial upon the ground that such evidence was newly discovered.

A still more serious question is presented, however, when we come to consider the nature of the evidence itself as being such as to probably change the result if a new trial should be granted.

Blumenfeld was examined as a witness for the plaintiff in support of its application for a new trial, but at no point in his testimony did he attempt to identify the correspondence relied upon, and particularly the letter of August 22, 1917, as being genuine correspondence between himself and the defendant, nor did he attempt to testify at all upon any material matter, except to deny in a general way that he had forged the name of the defendant to the checks in controversy. This testimony, of course, was naturally to be expected in the nature of the case and could not be accepted as such evidence as would probably change the result of the trial.

There was no attempt made to connect the various exhibits relied upon with the defendant, or to show that the same was genuine correspondence, and in these circumstances this court cannot say that the introduction in evidence upon a new trial of unidentified correspondence, contained in boxes with a mass of other documents and papers, and left in storage with strangers in the city of New York for a number of years, could or would probably change the result of the trial.

The rule is well established in this jurisdiction that a new trial will not ordinarily be granted on the ground of newly discovered evidence, unless it appears that the evidence if produced would probably produce a different result. Eisminger v. Beman, 32 Okla. 818, 124 Pac. 289.

It is equally well settled that a motion for a new trial on account of newly discovered evidence is addressed to the sound discretion of the trial court, and unless it appears that such discretion has been abused, the ruling of the court will not be disturbed upon appeal. Missouri, K. & T. Ry. Co. v. Taylor, 69 Okla. 79, 170 Pac. 1148.

Upon a survey of the whole record, we cannot say that the trial court abused its discretion in refusing to grant plaintiff a new trial upon the ground of newly discovered evidence.

For the reasons stated, the judgment of the trial court should be and is hereby affirmed.

By the Court: It is so ordered.