## COOK v. HARJO et al.

No 16754—Opinion Filed July 27, 1926.

**1. Appeal and Error—Sufficiency of Evidence—Review in Equity Case.**

In an appeal to this court from a judgment of a trial court, in a case of purely equitable cognizance, where the record discloses competent and material evidence sufficient to make prima facie proof of every fact essential to the existence of the defense of the defendant on which the judgment is based, and the judgment is not clearly against the weight of the evidence, the judgment will not be set aside.

**2. Indians—Tribal Status of Allottee—Conclusiveness of Allotment.**

The question of fact whether a Creek Indian is entitled to be on the rolls of citizenship, and to participate in the division of tribal lands, cannot be retried in the courts, when not impeached for fraud or mistake, where the decision of the Dawes Commission to place the name of such Indian on the roll of Creek citizens by blood has been followed by the action of the Interior Department confirming the allotment and ordering the patents conveying the lands, which were in fact issued.

**3. Appeal and Error—Discretion of Trial Court—New Trial for Newly Discovered Evidence.**

A motion for a new trial, on account of newly discovered evidence, is addressed to the sound discretion of the trial court, and in the absence of an abuse of such discretion its action thereon will not be disturbed on appeal.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Okfuskee County; John L. Norman, Judge.

Action by Wallace C. Cook against Albert Harjo and others to determine the title and ownership of land. Judgment for defendants, and plaintiff appeals. Affirmed.

C. T. Huddleston and Logan Stephenson, for plaintiff in error.

James C. Davis, for defendants in error.

Opinion by FOSTER, C. This was a proceeding brought in the court below by the plaintiff in error, Wallace C. Cook, against Moses Jefferson, Thomas Jefferson, Senora Jefferson, Henry W. Perryman, Melissa Crow, Jonas Harjo, Tarso Harjo, Thomas Homahta, L. B. Jackson, T. B. Slick, and the heirs, executors, administrators, devisees, trustees, and assigns of Martie, deceased, as defendants, pursuant to chapter 261 of the 1919 Session Laws of Oklahoma, to determine the title and ownership of 160 acres of land located in Okfuskee county.

The plaintiff in error claimed title through approved conveyances from the above-named defendants, except L. B. Jackson and T. B. Slick, as heirs at law of Martie, deceased, a full-blood Creek Indian enrolled opposite roll No. 8164.

Notice by publication was obtained upon the unknown heirs of Martie, deceased, pursuant to which various defendants appeared in the case and set up title in said allotment, among them being the defendants in error, Albert Harjo, Alex Harjo, and Martha Harjo. The asserted claims of various other defendants were denied by the trial court in its judgment, from which no appeal has been prosecuted.

The trial court, however, in its judgment determined that each of the defendants in error was entitled to an undivided one-eighth interest in the allotment in question, and rendered judgment accordingly. From this judgment and from an order overruling his motion for a new trial, the plaintiff in error appeals to this court for review, claiming in the first place that the judgment is against the clear weight of the evidence.

The trial court found that Henry W. Perryman, Melissa Crow, Thomas Homahta, Jonas Harjo, Tarso Harjo, Alex Harjo, Albert Harjo, and Martha Harjo were all second cousins of Martie, deceased, and each entitled to inherit the undivided one-eighth interest in his allotment. The effect of this judgment, as we understand it, is that the plaintiff in error is the owner only of the five-eighths undivided interest in said allotment, the remaining three-eighths interest being still owned by the defendants in error.

The question, therefore, for our determination, under the record here presented, is whether the judgment of the trial court to the effect that the defendants in error were entitled to share equally in the allotment in question with Henry W. Perryman, Melissa Crow, Thomas Homahta, Jonas Harjo, and Tarso Harjo is against the clear weight of the evidence.

It seems to be agreed between the parties that Martie, the allottee, died in 1917, intestate, unmarried, and without issue, leaving neither father, mother, brother, nor sister surviving. The parties appear also to be in agreement that Martie was a son of Fushutche Harjo, and Peecher. The evidence relied on by both sides to establish the relationship of the contending parties with Martie was largely a matter of vague recollec-

tion by aged witnesses of events transpiring many years ago and of hearsay statements communicated from one relative to another, and viewed in its entirety the evidence was not very certain and definite.

The contention of the defendants in error that they are second cousins of Martie appears to be based upon the theory' that Martie left surviving neither brothers nor sisters nor descendants of brothers or sisters, and that their relationship was traced through Cinda, an aunt of Martie and the grandmother of the defendants in error; that the father and mother of Martie were Fushutche Harjo and Peecher; that Cinda was a sister of Fushutche Harjo, whose daughter, Lucy Harjo, was the mother of the defendants in error, making Martie, deceased, and the defendants in error second cousins.

This was substantially the testimony of all the defendants in error, which appears to be corroborated by the conduct and declarations of Martie himself. When we come to consider the claim of the plaintiff in error that Henry W. Perryman, Melissa Crow, Thomas Homahta, Jonas Harjo, and Tarso Harjo were more closely related to Martie than the defendants in error, plaintiff in error's witnesses do not appear to be in agreement as to the facts relied upon to establish such relationship.

Some of the witnesses, particularly Thomas Homahta, made plaintiff in error's grantors second cousins of Martie, tracing the relationship through Hulputta Harjo, a brother of Martie's father, Fushutche Harjo, and through certain sisters of Peecher, Martie's mother, while other witnesses for plaintiff in error, notably Tecumseh Green and Okfuskee Harjo, repudiated this theory and traced the relationship of some of plaintiff's grantors through an alleged brother of Martie, Osia Yahola, the admitted father of Melissa Crow.

It developed later, during a hearing in the trial court on plaintiff's supplemental motion for a new trial, that plaintiff in error seemed to rely upon the testimony of Shawnee Harper and James Rabbit to the effect generally that Hulputta Harjo was not, as testified to by Thomas Homahta, an uncle of Martie, but on the contrary was a brother of Martie, which would make Thomas Homahta a nearer relation of Martie than he appeared to be according to his own testimony.

There was, in our view of the case, such a lack of consistency in the sworn testimony of the various witnesses for plaintiff in error and such vagueness and uncertainty in the stories detailed by some of these witnesses as in our opinion to fully justify the trial court in finding in favor of the defendants in error, establishing them to be second cousins of Martie, and entitled equally with the plaintiff in error's grantors to inherit his estate.

In an action of equitable cognizance it is the duty of the Supreme Court on appeal to review the entire evidence, weigh the testimony of the witnesses, as well as the facts and circumstances which tend to corroborate or discredit them, and to determine the case accordingly, and if upon such review the judgment and finding of the trial court is not clearly against the weight of the evidence, the judgment of the trial court should be sustained.

It is well settled in this state than in an equitable action the presumption is in favor of the finding of the trial court, and it will not be set aside unless clearly against the weight of the evidence. Simpson v. Schall et al., 110 Okla. 90, 236 Pac. 384; Johnston v. Key et al., 110 Okla. 19, 235 Pac. 211.

Upon a careful survey of the entire evidence we cannot say that the judgment of the trial court is clearly against the weight thereof.

The next proposition relied on by the plaintiff in error for a reversal of the judgment is that the trial court erred in not granting him a new trial on the ground of newly discovered evidence. This contention is based on two propositions: (1) That it had been discovered, subsequently to the trial, by the plaintiff in error that a judgment had been rendered by the district court of Creek county in a proceeding for the determination of the title to the allotment of one Choelle, that the defendants in error were not heirs of the said Choelle, and that this judgment operated to bar the claims of defendants in error in the instant case, by reason of the fact that Martie and Choelle are in fact the same person. (2) That new evidence was discovered by the plaintiff in error subsequent to the trial, material to his cause, which could not with reasonable diligence have been discovered before the trial, and that this evidence, when produced at a subsequent hearing, would probably change the result of the trial.

It appears that there was a hearing in the trial court upon plaintiff in error's supplemental motion for a new trial in which considerable testimony was introduced on both

sides, and the trial court, after hearing and considering all of the testimony, overruled said application for a new trial based on newly discovered evidence. Among other things, the pleadings in the Creek county case were introduced in evidence, together with the entire transcript of the evidence in that case and the final judgment of the court therein. There also was introduced in evidence the census and enrollment cards of both Choelle, Creek roll No. 8184, and Martie, Creek roll No. 8164; also the Creek tribal rolls of 1859, 1867, and 1895, toge.her with the affidavits of James Rabbit and Shawnee Harper, to the effect that Martie was a brother and not a nephew of Hulputta Harjo, and the counter affidavits of Tilla Harjo and Yupahake, to the effect that Hulputta Harjo and Martie were not brothers. It appeared from this evidence that the first time the names of Choelle and Martie appeared on any Indian roll was that of the 1895 rolls, wherein Martie appeared opposite No. 109, Muyaka Town, and Choelle appeared opposite No. 8, of Pukon Talihasse Town. The evidence also disclosed that Martie sometimes went by the name of Choelle and was known and recognized under various other names by the Creek Indians of his day, and that an investigation was conducted by the Secretary of the Interior about the year 1912 to determine whether there had been duplicate allotments made to the same person, under the names of Choelle and Martie, resulting in the institution by the government of an action in the United States court to cancel the allotment of Choelle in Creek county, which was subsequently dismissed for want of evidence.

There is no showing that the defendants in error appeared and participated in the trial of the proceeding in Creek county. An examination of the pleadings in the Creek county case fails to disclose that the identity of Choelle and Martie was put in issue thereby, or that the judgment of the Creek county court in that proceeding actually determined that issue. On the other hand, that proceeding merely determined the heirship and ownership of an allotment of land in Creek county which all parties agreed had been allotted to Choelle, Creek roll No. 8184.

It surely cannot be successfully maintained that the action of the Dawes Commission in enrolling Martie and Choelle under separate roll numbers and issuing enrollment cards as to each showing different ages and card numbers and in issuing census cards as to each showing different tribal enrollments, different fathers and different mothers, could be impeached by the judgment of a state court in a proceeding for the determination of title and heirship, where there was no issue raised in the pleadings of fraud or mistake on the part of the officials of the Indian department in so enrolling these parties.

In U. S. v. Wildcat, 244 U. S. 111, the Supreme Court of the United States, speaking through Mr. Justice Day, held:

"The question of fact whether a Creek Indian was living on April 1, 1899, the decision which was committed to the Dawes Commission by the Curtis Act of June 28, 1898 (30 Stat. at L. 495, chap. 517), and the Creek Agreement of March 1, 1901 (31 Stat. at L. 861, chap. 676), No. 28, authorizing such Commission to make investigation and determine the names of those entitled to be on the rolls of citizenship and to participate in the division of the tribal lands, cannot be retried in the courts, when not impeached for fraud or mistake, where the decision of the Commission to place the name of such Indian on the roll of Creek citizens by blood has been followed by the action of the Interior Department, confirming the allotment, and ordering the patents conveying the lands, which were in fact issued."

In Folk v. U. S., 233 Fed. 177, the Eighth Circuit Court of Appeals, speaking through Mr. Justice Sanborn, held:

"The adjudications by the Dawes Commission of the enrollment of Indians and the allotment of their lands and the patents issued thereon are conclusive and impervious to collateral attack. In suits in equity to avoid them by direct attack the burden is on him who attacks them, and he may successfully assail neither of them by doubtful evidence, or a mere preponderance of it. He may succeed only by full proofs, clear, convincing, unambiguous, and entirely satisfactory to the court on every material issue."

The action of the United States through its representatives in dismissing its action to cancel the allotment of Choelle in Creek county on the ground that the allotment was a duplicate allotment, for want of evidence, and its failure to institute an action to cancel the allotment of Martie in Okfuskee county on similar grounds, is to our minds a strong circumstance tending to show that the representatives of the United States did not regard Martie and Choelle as one and the same person.

Furthermore, can it be said that there is in this record clear, unambiguous, and convincing countervailing evidence clearly establishing error or mistake in enrolling Martie and Choelle as separate individuals, in view of the testimony of Martie himself, appearing in the record, that he was not related

to Tum Emarthla, who is shown by the census card of Choelle to have been Choelle's father?

Plaintiff in error finally contends that he was entitled to a new trial because of statements made by James Rabbit and Shawnee Harper in their affidavits filed by plaintiff in error, as newly discovered evidence, to the effect that Hulputta Harjo was the son of Fushutche Harjo.

The general rule established in this state is that a motion for a new trial, on the ground of newly discovered evidence, is addressed to the sound discretion of the trial court, and unless that discretion has been abused, the ruling of the trial court will not be disturbed on appeal. Schaap v. Williams, 99 Okla. 21, 225 Pac. 910; Lamb v. Alexander, 83 Okla. 292, 201 Pac. 519.

We have already called attention to the lack of consistency in the evidence of different witnesses for plaintiff in error as to the relationship of plaintiff in error's grantors with Martie.

One of the theories of plaintiff in error urged in the argument of his assignment that the judgment of the trial court was clearly against the weight of the evidence was that Martie was a brother of Osia Yahola, which would result in giving the entire allotment to Melissa Crow as a niece of Martie. Another theory was that embodied in the testimony of Thomas Homahta, to the effect that Hulputta Harjo and Fushutche Harjo were brothers and that he (Thomas Homahta) was a grandchild of Hulputta Harjo, and therefore a second cousin of Martie, who was conceded to be a son of Fushutche Harjo.

The relationship as detailed by the witness, Homahta, appears to have been the theory adopted by plaintiff in error in the trial court from the following:

"By Mr. Huddleston: Unless there is a disputed point along that line, whether Hulputta had any children or not, I will not introduce further evidence.

"By Mr. Davis: I don't know. Are you claiming he was a brother of Fushutche Harjo?

"By Mr. Huddleston: Yes, sir."

The evidence, as contained in the affidavits of James Rabbit and Shawnee Harper, relied upon by the plaintiff in error as newly discovered evidence, advances still another theory of the relationship of plaintiff in error's grantors with Martie, in direct conflict with the testimony of Thomas Homahta, to

the effect that Hulputta Harjo was a son of Fushutche Harjo and a brother of Martie, which would make Thomas Homahta a grand nephew of Martie, instead of a second cousin, as testified to by him at the trial.

When the affidavits of Tilla Harjo and Yupahake are considered in opposition to the affidavits of James Rabbit and Shawnee Harper, in which it is stated that Hulputta Harjo and Martie were not brothers, it is difficult to conceive how a new trial could result in any different judgment than has already been rendered, or in what respect the trial court abused its discretion in refusing to grant a new trial on the ground of newly discovered evidence as contained in these affidavits.

We perceive no error in the action of the trial court in refusing to grant a new trial on the ground of newly discovered evidence. For the reasons stated in the opinion, the judgment of the trial court is in all things affirmed.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. p. 900 §2869; 2 R. C. L. p. 202; 1 R. C. L. Supp. p. 442; 4 R. C. L. Supp. p. 91; 5 R. C. L. Supp. p. 81. (2) 31 C. J. p. 490 §30. (3) 4 C. J. p. 835 §2817; 20 R. C. L. p. 290; 3 R. C. L. Supp. p. 1051; 4 R. C. L. Supp. p. 1351; 5 R. C. L. Supp. 1096.