## SEIDENBACH'S v. OLIVER.

No. 20441. Opinion Filed Nov. 11, 1930.

Samuel A. Boorstin and E. M. Calkin, for plaintiff in error.

Guy S. Manatt, for defendant in error.

BENNETT, C. This case originated in a justice court of Tulsa county from which it was appealed first to the court of common pleas of that county, and thence to this court. The parties will be referred to as plaintiff and defendant in the order in which they appeared in the lower courts.

Plaintiff, a young woman, and, by occupation, a stenographer, sought to recover from defendant, a dealer in women's ready-to-wear garments in Tulsa, $75, the amount of a deposit made to be applied on the purchase of a fur coat to be ordered and furnished to her by defendant. The cause was submitted to a jury who awarded plaintiff her claim, less $13.33, an undisputed counter-claim in favor of defendant. The defendant appealed.

Two propositions are urged for reversal: (1) That the verdict of the jury is not

reasonably supported by the evidence; and (2) that defendant's motion for new trial based upon the claim of newly discovered evidence should have been sustained. These contentions will be considered in order.

Plaintiff's evidence, in substance, is that she was 25 years of age and employed by Frates Company in Tulsa; that late in August, 1927, defendant's store was conducting a discount sale, and that she went there to purchase a coat. She found a garment suitable in style and texture, but not of the desired color. The coat found was brown, whereas she wished a gray coat, and so informed defendant. She was in the store two or three times and was called up by Miss Shannon, the saleslady, who urged her to take advantage of the summer sale. Finally the defendant agreed to make a special order for the kind of coat desired by plaintiff, and she was required to make a deposit to assure that she would take the coat if ordered and furnished according to her requirements.

Plaintiff at that time had a small charge account with defendant, but her credit was not sufficient to purchase on time a coat of this price. When she made the deposit it was agreed that she would take a gray coat otherwise similar to the one then in stock. If no such coat were found, that the deposit might be used as a payment on any other coat then in stock, or said amount would be credited to plaintiff's account in the store and made available to her to purchase anything else she chose. At that time she gave defendant her check for $65 and indorsed on its face "Dep. fur coats 6256." The number "6256" was plaintiff's telephone number, and under her signature on the check there appeared her residence address. This check was dated September 3, 1927. On November 1st plaintiff gave defendant her check for $10 with the notation thereon "Bal. dep. on coats." Plaintiff went back to the store twice, but the coat had not come, and Miss Shannon kept telling plaintiff that she would get the coat. November 10th or 11th plaintiff demanded the return of her money or that she be given credit for same on defendant's books, but this was refused. She spoke about the matter to Miss Shannon who referred her to defendant's office. There she inquired for Mr. Andrews, but she was then referred to Miss Russell in charge of the credit department. She asked Miss Russell to give her credit upon account for her deposit, informing her that she could not take the coat at all. Miss Russell said that she knew nothing about it, but would speak to some one else about the matter. Later she informed plaintiff that they could not give her credit for the amount of the deposit. Later plaintiff went several times to see Mr. Seidenbach, but he also refused to O. K. the credit and said that he could not be bothered. Two or three days later plaintiff talked to the credit department of defendant, but they positively refused to give plaintiff any credit for the deposit. Plaintiff at no time ever selected any particular coat, nor did she direct that any specific coat be laid away for her.

Cross-examination: Plaintiff at all times asked simply that her deposit be credited to her account so that same might be used in the purchase of other goods from the store. Plaintiff bought another coat from another concern about a month later.

The evidence of defendant was to the effect that plaintiff purchased a brown coat then on hand in defendant's store and caused same to be laid away, and that she made the two payments referred to as part of the purchase money of this coat and that later plaintiff failed to pay the balance and defendant sold the brown coat in regular course as a part of its stock. A part of the examination of Miss Shannon is as follows:

"Q. Was there anything said to you about ordering a gray coat for her? A. She spoke about it, but, you see, I did not have anything to do with the ordering. Q. Do you know that she spoke to someone else about ordering a gray coat? A. Yes, sir. I had nothing to do with ordering anything for her. Q. But she did speak to somebody else about this gray coat? A. Yes, sir. Q. But you had nothing to do with that? A. Nothing whatever."

There is evidence of defendant to the effect that before a special order for the gray coat would be made that a deposit would have to be put up; that they made a special order for the gray coat, but that it could not be had, but that the deposit was not made upon the gray coat but upon the brown coat, and that this brown coat was sold outright to plaintiff. Defendant adduced evidence that the brown coat was put back in stock and sold early in November.

Defendant introduced evidence tending to contradict plaintiff's evidence that the said notations were on the checks when delivered, but Mr. Johnson, the credit man and witness for defendant, testified that the notations on the checks were there at the time they were given.

There is other testimony of similar import to that referred to, but it is apparent from this evidence that there is really but one issue involved: Did the plaintiff buy a particular coat, or was the deposit made simply for the purpose indicated in her testimony? At the instance of defendant a special interrogatory was submitted to and answered by the jury, to wit:

"Q. Do you find from the evidence that the plaintiff, Polly Oliver, paid the $75 on a particular and specific fur coat? A. No."

A general verdict for the plaintiff was also rendered by the jury.

If there is any rule of this court that is firmly fixed in our decisions, it is that in a law action tried to a jury, their verdict and judgment of the trial court thereon will not be disturbed on appeal, where there is any evidence in the record reasonably tending to support the finding of the jury. Howard v. St. Johns Grand Lodge, 130 Okla. 300, 267 Pac. 476; Bayers v. Gamblin, 130 Okla. 82, 265 Pac. 650; National Builders Bureau v. Chickasaw Lumber Co., 130 Okla. 30, 264 Pac. 907; Mayhue v. Born, 130 Okla. 252, 267 Pac. 256.

We have gone over the entire record to ascertain if plaintiff's evidence reasonably tends to sustain the verdict and judgment, and plaintiff's contention that she bought no particular coat from the defendant, but that she made the deposit only in order to have a special order made for a coat of her choice which was never delivered to her. We find the evidence sufficient. Plaintiff's testimony is to this effect and the checks introduced are corroborative and indicate that her contention is correct. We are not required to weigh this evidence. The witnesses were before the court and jury and under correct instructions a verdict has been found against defendant on two issues, either one of which is sufficient for the purpose of this trial, since the amount involved is not in dispute. Defendant's first position is therefore not well-founded.

2. Mr. Johnson, the attorney who represented the defendant, made affidavit that one Genevieve Quinn, who worked for the same company as plaintiff, had never informed said attorney that she knew the facts set out in her affidavit; that said attorney had made every effort to ascertain the facts connected with the controversy, but that he had not learned of the facts with reference to the knowledge of Miss Quinn until after the trial. This case was filed in the justice court on November 28, 1927, and tried December 19, 1927, and appeal was filed in the court of common pleas January 23, 1928, and tried before a jury therein November 28, 1928. Many months intervened between the filing and the disposition of this case. In less than three weeks after the trial, counsel was advised of what the witness would testify. The trial court in denying motion for new trial did not indicate upon what ground the denial was based. Upon consideration of all the affidavits and of this record, if he denied the motion upon the ground that no proper showing of diligence was made, we could not say that the court abused its discretion.

"'Motions for new trial upon the extraordinary ground of newly discovered evidence are not favored. If not regarded with suspicion, they should at least be granted with great caution. They should only be granted to avoid palpable injustice, and in order that the judgment set aside may perhaps be replaced by a different finding.'" Hobbs v. Smith, 27 Okla. 830, 115 Pac. 347, quoting from Ferguson v. State, 1 Ga. App. 841.

See, also, Marland Ref. Co. v. Snider, Adm'r, 120 Okla. 116, 251 Pac. 989; Cook v. Harjo, 118 Okla. 291, 248 Pac. 651; Eisenbeis v. Crocker, 99 Okla. 30, 225 Pac. 510; Summers v. Williams, 128 Okla. 9, 260 Pac. 1064.

The witness whose testimony is not sought has been working in the same office with plaintiff and for the same employer. It must have been apparent always in this case that recovery must depend upon the plaintiff's testimony. If they wished to impeach her evidence, or to use her statements to others for any purpose, it would seem that inquiry of those with whom she worked would first have been made. Miss Quinn says that no one approached her as to the facts. To lay down the rule contended for here by defendant would protract litigation and encourage attorneys and parties to believe that they would be given another chance to prepare their cases. To ascertain the evidence with reference to this simple transaction required no great foresight. It should have been readily obtained from the parties to it and those immediately surrounding such parties. Inconsistent statements of a party are to be looked for first among those with whom such party works and associates. They are the ones in whom he would naturally confide. The action of the court perhaps might be sustained upon other grounds urged, but our holding makes it unnecessary to consider them. For the reasons given the judgment is affirmed.

REID, LEACH, HERR, HALL, DIFFEN-DAFFER, and EAGLETON, Commissioners, concur.

By the Court: It is so ordered.