Jack SMITH, Appellee,

v.

Gary C. JOHNSTON and Otto R. Krueger Electric Co., Inc., Appellants.

No. 49543.

Supreme Court of Oklahoma.

Oct. 24, 1978.

Rehearing Denied March 12, 1979.

Patrick Brown, Keith R. Treadway, Oklahoma City, for appellee.

Hunt, Thomas, Dawson & Gile, Oklahoma City, for appellant, Gary C. Johnston.

William C. Majors, Oklahoma City, for appellant, Otto R. Krueger Elec. Co., Inc.

LAVENDER, Vice Chief Justice:

Jack C. Smith (owner) and Gary C. Johnston (contractor) entered into a contract in 1971 for Johnston to build a house for Smith. Otto R. Krueger Electric Co., Inc. (electrical contractor) was the electrical sub-contractor on the construction. House was completed and Smith took occupancy that same year. In 1974, Smith sought the addition of other lighting by another electrical contractor. In performing that work, the latter electrical contractor found conditions in the house wiring that he believed justified the notification of the city electrical inspector. An inspection determined the house to be dangerous. The last electrical contractor was hired by owner to remedy certain deficiencies so as to make the house safe. Owner brought suit against the contractor and his electrical sub-contractor.

Owner's petition contained two causes of action. The first cause of action sought an accounting from the general contractor, under a fee basis in the contract. Second cause of action seeks money damages including actual and exemplary damages. The allegations in that second cause of action included intentional acts creating a dangerous condition in the house making it inherently dangerous and of the contractors conspiring to commit fraud through the use of inferior materials.

At pre-trial conference, an order was entered eliminating from jury trial the consideration of the accounting pled in the first cause of action and narrowing the jury trial issue to damages for difference in value of material required and of material installed along with exemplary damages. During trial and on questioning of the court, owner's attorney limited consideration to torts based on fraud in using aluminum instead of copper wiring as claimed was required by the specifications and installed so negligently as to cause a fire hazard. Trial court allowed into evidence a cost item of some $438.00 that owner testified was the cost of necessary work to make the house safe from fire. Trial court refused into evidence the cost of replacing the aluminum wiring with copper wiring.

Jury returned a verdict of $432.25 actual damages against both contractors and exemplary damages against the general contractor of $25,000 and $10,000 against the electrical contractor. Plaintiff subsequently accepted a court ordered remittitur of $5,000.00 against each of the amounts recovered as exemplary damages. Contractors appeal.

Consideration of this appeal requires a determination as to just what kind of action was involved, either contract or tort; and if the essential elements were present, including actual damages resulting therefrom, for a tort action.

This jurisdiction's case law has allowed on occasions the "waiving of contractual rights and suing on the tort." *Hobbs v. Smith, 27 Okl. 830, 115 P. 347, 350 (1911)*; *Hall Jones Oil Corporation v. Claro, Okl., 459 P.2d 858 (1969).* Other like Oklahoma authorities were reviewed in *Burton v. Juzwik*, Okl., 524 P.2d 16 (1974), but there the gravamen of the cause of action was determined to be a breach of contract and not tort, so as not to present an election to the plaintiff.

In present case, owner chose to bottom his action on tort. The issue then becomes whether the owner had the option of choosing between a tort or contract action. That stance must be viewed in the present posture of the case coming after trial and judgment for actual and exemplary damages.

Though not always clear, an examination of the pleadings, evidence at trial, and instructions to the jury suggest (1) a tort based on fraud in not using in the construction of the dwelling the alleged specified kind of wiring, and (2) a tort based on malfeasance in performance through negligent work in installation so as to create a hazardous condition for owner.

■■■ As to the fraud position, the remedy of a finished product not conforming to the contract is non-performance and not one based on fraud. *Jones v. Featherston, Okl., 373 P.2d 16 (1962)*. Nor was there any evidence allowed to go to the jury in the present case upon which an award for damages resulting from fraud could have been based. We find no tort action based upon fraud nor evidence of fraud upon which the jury could have allowed the actual damages determined of $432.25.

Prosser[1] acknowledges the relation between remedies in contract and tort as a confused field. He speaks of the early developed dividing line of "nonfeasance," which meant not doing the thing at all, and "misfeasance," which meant doing it improperly. He says that division is scorned but generally followed, for it draws a valid line between the complete non-performance of a promise, which in the ordinary case is a breach of contract only, and a defective performance, which may also be a matter of tort.

In present case, it is argued there was no violation of a duty. Crowe, in an article "The Anatomy of a Tort,"[2] in discussing a

1. Prosser, Law of Torts (4th ed., 1971) § 92 reads in part:

"The fundamental difference between tort and contract lies in the nature of the interests protected. *Tort actions are created to protect the interest in freedom from various kinds of harm.* The duties of conduct which give rise to them are imposed by the law, and are based primarily upon social policy, and not necessarily upon the will or intention of the parties. They may be owed to all those within the range of harm, or to some considerable class of people. Contract actions are created to protect the interest in having promises performed. Contract obligations are imposed because of conduct of the parties manifesting consent, and are owed only to the specific individuals named in the contract.

\* \* \* \* \* \*

"*The relation between the remedies in contract and tort presents a very confusing field,* still in process of development, in which few courts have made any attempt to chart a path.

\* \* \* \* \* \*

"The line of division which developed quite early was that between 'nonfeasance,' which meant not doing the thing at all, and 'misfeasance,' which meant doing it improperly. Much scorn has been poured on the distinction, but it does draw a valid line between the complete non-performance of a promise, which in the ordinary case is a breach of contract only, and a defective performance, which may also be a matter of tort. In general the courts have adhered to the line thus drawn;

\* \* \* \* \* \*

"Where the defendant has done something more than remain inactive, and is to be charged with 'misfeasance,' the possibility of recovery in tort is considerably increased.

\* \* \* \* \* \*

"Beyond this the American courts have extended the tort liability for misfeasance to virtually every type of contract where defective performance may injure the promisee. \* \* \* The principle which seems to have emerged from the decisions in the United States is that *there will be liability in tort for misperformance of a contract whenever there would be liability for gratuitous performance without the contract which is to say, whenever such misperformance involves a foreseeable, unreasonable risk of harm to the interests of the plaintiff.*"

\* \* \* \* \* \*

(Emphasis added; footnotes deleted.)

2. William L. Crowe, Sr., The Anatomy of a Tort, 22 Loyola L.Rev. 903, 912:

"Violation of Duty

\* \* \* \* \* \*

" \* \* \* Rather than a futile and meaningless application of such a definition, a more valid analysis involves the application of a consideration of the factors of negligence to any given factual situation. These factors of negligence can be labeled: (1) likelihood of the harm; (2) gravity of the harm; (3) burden of prevention; and (4) social utility of the defendant's conduct.

"*Likelihood of harm* involves nothing more than a consideration of the chances that any given harm might occur. Of course, the chances of a harm occurring must be viewed in the dimensions of time and space in which the defendant acted or failed to act. Certainly in this area, foreseeability plays no mean role. *Gravity of the harm* is simply an inquiry dealing with a determination of how serious the harm would be should it occur. *Burden of prevention* is a consideration of the relative ease of difficulty which would have been en-

violation of a duty, talks of labeling factors of negligence so as to include (1) likelihood of harm; (2) gravity of the harm; and (3) burden of prevention. If the likelihood and gravity of a given harm are of no particular moment, but the defendant could have avoided, with little or no appreciable effort, the harm, then he indicates "the pendulum may swing back toward a finding of negligence." See also 76 O.S.1971, § 1.[3]

■ Here, the owner's house as wired by the contractors was determined by the city electrical inspector witness to "have great danger to property" and "cause a fire hazard." Cost of removing that danger was some $400. Though the likelihood of harm may have been of no particular moment, the gravity was great and, with little appreciable effort, could have been avoided. We find there was a violation of a duty owed by law, regardless of whether it was also imposed by contract, to the owner by the contractors. Burden of prevention in taking steps to prevent the harm from occurring was that of the contractors. This burden was shifted to the owner at an expenditure and damage to him of $432.25 found as actual damages by the jury. The necessary elements to sustain a tort action were present.

Electrical contractor argues limitation of two years under 12 O.S.1971, § 95[4] with the construction being completed in 1971 and the tort action filed in 1974. Here, with the likelihood of harm being of no particular moment, and having begun in 1971, that harm continued until it was abated. Abatement by the owner could take place only upon his discovery and learning of harm and of the hazardous condition. Though distinguishable from present case, in *Seitz v. Jones, Okl., 370 P.2d 300, 302,* this court said:

"* * * the legislative policy in prescribing a period of limitations for the commencement of actions may well be borne in mind. *The statute of limitations* is a statute of repose, enacted as a matter of public policy to fix a limit within which an action must be brought, or the obligation is presumed to have been paid, and *is intended to run against those who are neglectful of their rights, and who fail to use reasonable and proper diligence in the enforcement thereof.* The underlying purpose of statutes of limitations is to prevent the unexpected effort at enforcement of stale claims concerning which persons interested have been thrown off their guard by want of prosecution for a long time." (Emphasis added.)

■ Here, as in *Seitz, supra,* failure to discover was not because of any negligence on owner's part. This owner's knowledge was not sufficient to make a determination as to the hazardous condition caused by the hidden defect in the electrical wiring. The discovery was happenstance and came through the need of additional lights that caused another electrician to suggest addi-

---

countered by the defendant in taking steps to prevent the harm from occurring. *Social utility of defendant's conduct* is a consideration of the value of the defendant's overall enterprise or activity to society or the community in which it takes place.

"The factors of negligence are not more susceptible of mathematical application than are the factors of duty. Thus, if the likelihood of a given harm occurring is great, but the harm which is deemed to be likely is minuscule, the tendency may be toward a finding of no negligence. Similarly, *if the likelihood and gravity of a given harm are of no particular moment, but the defendant could have, with little or no appreciable effort, avoided the harm, the pendulum may swing back toward a finding of negligence.* (Our emphasis added.) * * *." (Footnotes deleted.)

3. 76 O.S.1971, § 1 provides:

"*Every person is bound,* without contract, *to abstain from* injuring the person or property of another, or *infringing upon any of his rights.*" (Emphasis added.)

4. 12 O.S.1971, § 95 reads in part:

"Civil actions other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:

* * * * * *

"Third. Within two (2) years: * * * an action for injury to the rights of another, not arising on contract, and not hereinafter enumerated; * * *."

tional inspection by the city. That inspection resulted in the discovery of the harm caused by the hazardous condition. Owner was not neglectful of his rights and did not fail to use reasonable and proper diligence after the discovery.

We hold the limitation period of two years did not begin to run until learning of or, in the exercise of reasonable care and diligence, should have learned of the harm through discovery of the hazardous condition caused by the hidden defect. In present case, that occurred in 1974, the same year suit was filed. Nor do we find owner failed to exercise reasonable care and diligence and should have made the discovery earlier. Limitations had not run. We do not reverse on that issue.

■ The trial court properly, and without objections except as to definition of fraud, instructed on exemplary damages that included, but was not limited to, the requirements of actual damages and of finding malice through an utter indifference to or conscious disregard for the owner's rights as a "willful and wanton" course of action. We allow the judgment of actual damages and of exemplary damages, with the accepted remittitur, to stand.

Affirmed.

WILLIAMS, SIMMS, DOOLIN, and HARGRAVE, JJ., concur.

HODGES, C. J., and IRWIN, BERRY, and BARNES, JJ., dissent.