2001 OK 21

**DIGITAL DESIGN GROUP, INC.,**
Plaintiff/Appellee/Cross–
Appellant,

v.

**INFORMATION BUILDERS, INC.,**
Defendant/Appellant/Cross–
Appellee,

and

**The State of Oklahoma, ex rel., The Commissioners of the Land Office, Defendant.**

No. 92,018.

Supreme Court of Oklahoma.

Feb. 27, 2001.

Gladys E. Cherry, John M. Rowntree, Jr., Stephen G. Solomon, Oklahoma City, OK, for Appellee/Cross–Appellant.

Clyde A. Muchmore, George W. Dahnke, Murry E. Abowitz, Oklahoma City, OK, for Appellant/Cross–Appellee.

KAUGER, J.:

¶1 Two issues are presented on certiorari: 1) whether the discovery rule applies to a libel claim;[1] and 2) whether the evidence was sufficient to support a claim for contract damages. We hold that the discovery rule is applicable to the libel claim, and that when facts about the injury's discovery are disputed, the question of when the plaintiff knew or should have known is a fact question for the jury to decide. However, submission of the contract claim to the jury resulted in prejudicial error because of the probability that the jurors were misled by its interjection with the claim for libel damages.

## FACTS

¶2 In the late 1980's, the Oklahoma Commissioners of the Land Office (Commissioners), contacted the appellee/cross-appellant, Digital Design Group (Digital), about designing and implementing a mineral management computer system for the state of Oklahoma. Digital is a Colorado based computer engineering firm which designed systems for the land offices of Colorado and North Dakota. In May of 1990, the Commissioners executed a contract with Digital in the amount of $380,000.00 to design and develop a computer software system to manage Oklahoma's mineral interests.

¶3 The contract required the use of FOCUS, a computer software database management system developed and licensed by the appellant/cross-appellee, Information Builders, Inc. (Information Builders). In a letter dated June 1, 1990, the Commissioners notified Information Builders that it would be using FOCUS, and that a peer review of Digital's system designs would be needed and coordinated between Digital, the Commissioners and Information Builders. The Commissioners/Digital contract also provided that: 1) the Commissioners were responsible

---

1. Because the cause is reversed and remanded for a new trial, any unresolved issues raised by the petitions need not be addressed. See, Rule 1.80(b), Supreme Court Rules, 12 O.S.1991 Ch. 15, App. 1. We note that Information Builders filed a motion for judgment notwithstanding the verdict (JNOV)/or alternatively motion for new trial, which were both denied. Digital argued in its response brief that some of the issues in the JNOV were not raised in the new trial motion and thus were waived. The Court of Civil Appeals determined that the errors were preserved for review and Digital did not pursue the argu-

ment on certiorari. Nevertheless, we construe the motion for new trial, together with its corresponding brief as incorporating or including the arguments raised in the JNOV. *Horizons, Inc. v. Keo Leasing Co.*, 1984 OK 24, ¶4, 681 P.2d 757 (A motion seeking reconsideration, re-examination, rehearing or vacation of a judgment or final order which is filed within 10 days of such decision rendered, may be regarded as the functional equivalent of a new trial motion, no matter what its title. The meaning and effect of an instrument depends on its content and substance rather than on form.).

for obtaining the license to use FOCUS; 2) Digital would pay Information Builders for peer review services; and 3) the Commissioners would reimburse Digital for payments made to Information Builders, not to exceed a total of $7,500.00.

¶ 4 On September 5, 1990, Information Builders wrote to Digital agreeing to review Digital's preliminary database design. Information Builders estimated that it would take eight to twelve hours to review the design, and "identify all issues, if any, that require additional research, clarification or documentation." The cost quoted for the review was $75.00 per hour plus transportation and out-of-pocket expenses. At Information Builders' request, Digital's president signed and returned the original letter to authorize Information Builders to begin the peer review.

¶ 5 Representatives from Digital and Information Builders met on September 6, 1990, to begin a review of the preliminary database design. On September 17, 1990, Digital forwarded Information Builders a revised database design. Digital continued to work on the system from September 1990 through December 1990. During that period, Information Builders's involvement was minimal.

¶ 6 The Commissioners' Management Information Systems director (computer director) served as the Commissioners' project administrator. The Commissioners also formed a steering committee to oversee the project. The steering committee and Digital agreed that the system should be designed in phases. From the outset of the project, the computer director expressed concern with Digital's plan to design the system piece by piece rather than developing an overall design for the entire system before developing individual segments. The computer director continued to express concern with Digital's methodology, administration, and development of the system, insisting that the entire database should be designed first. The computer director's concerns were addressed during a December 10, 1990, meeting between the Commissioners' project steering committee, Digital, and Information Builders.

¶ 7 At the December 10th meeting, the steering committee confirmed that it favored the design of the system in phases. Information Builders agreed that this approach would work, but that it might require some retroactive changes to databases and codes as the databases were reviewed. The committee also decided that: Information Builders should resolve the differences; Information Builders' review responsibilities should be expanded; Digital's president and the Commissioners' computer director should work together to resolve their differences regarding the database structure if they could not reach agreement; Information Builders was to continue invoicing Digital for work performed; and Digital was to submit the invoices to the Commissioners for reimbursement. In order to facilitate the project management and improve communications between the parties, the Commissioners' secretary replaced the computer director as the Commissioners' project administrator.

¶ 8 However, in January 1991, the newly elected Governor of Oklahoma replaced the Commissioners' secretary, and the new acting secretary re-appointed the computer director to manage the project and supervise the contractor. On January 28, 1991, the computer director wrote to Information Builders expressing concern with Digital's design and development of the project. He directed Information Builders to stop any review which it may have been conducting for Digital, and he asked Information Builders to prepare a letter containing an evaluation of the current status of the project and possible alternatives.

¶ 9 On February 4 and 11, 1991, Information Builders responded to the computer director's request by two similar letters. Both letters commented on the history and status of the project and provided recommendations for the system. Information Builders offered: to assist in developing project management procedures; to review the system and database design and codes; and to "tune" the system for FOCUS. At the computer director's request, Information Builders expanded on the February 11th letter with another letter dated February 15, 1991. In this letter, Information Builders stated that Digital was "not following standard structured analysis and design methodologies

while developing the system," and it recommended use of a detailed design document with a "structured walkthrough of the design" by Commissioners, Digital and Information Builders. The letters were addressed to the computer director. Information Builders did not provide copies of the letters to Digital or to anyone other than the computer director.

¶ 10 In a March 1, 1991, memorandum to Digital's president, the computer director expressed concern with the system design and poor communications. The memorandum also related that Information Builders had identified several concerns after reviewing Digital's programming, and that it would be documenting those concerns. The memorandum ordered Digital to stop development of all programing while continuing to work to resolve outstanding problems.

¶ 11 On March 11, 1991, in response to another Commissioners' request, Information Builders notified the Commissioners that it believed it could complete the system within the remaining budget of $350,000.00. The Commissioners' secretary notified Digital by letter dated March 22, 1991, that she intended to recommend to the Commissioners that Digital's contract be terminated. She also directed Digital to cease any further work on the project. The Commissioners terminated the contract at their next meeting.

¶ 12 On March 20, 1992, Digital sued the Commissioners and Information Builders, asserting claims for libel, slander, breach of contract, tortious interference with contract, and breach of fiduciary duty. Digital and the Commissioners settled prior to trial, but Digital proceeded to jury trial against Information Builders. During the trial, the slander claim was dismissed, and the trial judge allowed only the libel and breach of contract claims to be submitted to the jury. The jury returned a verdict against Information Builders awarding $968,161.00 in actual damages and $737,500.00 in punitive damages. The trial court entered judgment on the jury's verdict, and it denied Information Builders' alternative motions for judgment notwithstanding the verdict or motion for new trial.

The trial court also denied Digital's motion for costs and prejudgment interest.

¶ 13 Information Builders appealed the jury verdict, and Digital counter-appealed from the trial court's denial of its motion for costs and prejudgment interest. The Court of Civil Appeals determined that Digital's libel claim was time-barred, and that Digital had failed to prove any damages with regard to its breach of contract claim. It reversed and remanded with instructions for the trial court to enter judgment in favor of Information Builders, and it also affirmed the trial court's denial of Digital's motion for costs and prejudgment interest. Digital filed a petition for certiorari which we granted on October 16, 2000.

## I.

### ¶ 14 THE DISCOVERY RULE APPLIES TO THE LIBEL CLAIM.

¶ 15 In the trial court, Digital alleged that "Information Builders made false, unwarranted and malicious written statements to the effect that [Digital] was not competent and was not properly performing its duties under its contract with the Commissioners." Digital's libel claim was based on the letters Information Builders sent to the Commissioners' computer director in February of 1991. As an affirmative defense, Information Builders asserted that the libel claim was barred by the one year statute of limitations for libel actions.

¶ 16 The limitations period for a libel action is set out in 12 O.S.1991 § 95, which provides in pertinent part:

"Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards: ...

Fourth. Within one (1) year: An action for libel, slander, assault, battery, malicious prosecution, or false imprisonment ..." [2]

Neither Digital nor Information Builders dispute that the controlling limitations period for the libel action is one year. The only dispute is over when it begins to run. Infor-

---

2. The pertinent portions of the current version of the statute remain substantially unchanged.

mation Builders insists that Digital's claim was time-barred as a matter of law because: 1) the one-year limitations period for libel actions began to run upon the publication of the alleged defamatory material; 2) the letters were sent to Commissioners' computer director in February of 1991; and 3) Digital's action was not filed until March 20, 1992.

■ ¶17 Digital urges us to apply the common law discovery rule to libel actions. The discovery rule allows the limitation period in certain tort cases to be tolled until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury.[3] Digital argues that: 1) it did not discover that it had been harmed until the secretary of the Commissioners wrote to Digital on March 22, 1991, that she intended to recommend to the Commissioners' Board of Directors that it terminate the contract; 2) it was not aware of the existence of the letters until mid-April 1991, when it discovered them through an open-records request; and 3) it was unaware and could not have been aware that the contract termination was caused by Information Builders' alleged defamatory communications until at least April 1991.

**¶18 A. The discovery rule applies to libel actions when the publication is likely to be concealed or published in a secretive manner which would make it unlikely to come to the attention of the injured party.**

■ ¶19 An action accrues when a litigant can first maintain an action to a successful conclusion.[4] It does not commence until a plaintiff has a legal right to sue.[5] In *Colbert v. World Pub. Co.*, 1987 OK 116, ¶7, 747 P.2d 286, we noted that in a libel action, recovery is sought primarily for the injury to one's reputation. The focus of the action is on the effect of the publication on what others may think of the person. Consequently, a libel action generally accrues on the date of publication.[6]

¶20 We have never determined whether the discovery rule may be utilized in libel actions. However, several other jurisdictions have addressed the question. The trend among those courts is to apply the rule in limited situations, for example—when the publication is likely to be concealed from the plaintiff or published in a secretive manner which would make it unlikely to come to the attention of the injured party.[7] It has been

3. *Samuel Roberts Noble Found., Inc. v. Vick*, 1992 OK 140, ¶22, 840 P.2d 619; *Reynolds v. Porter*, 1988 OK 88, ¶6, 760 P.2d 816, n. 8.

4. *Wille v. Geico Casualty Co.*, 2000 OK 10, ¶10, 2 P.3d 888; *Stephens v. General Motors Corp.*, 1995 OK 114, ¶8, 905 P.2d 797; *MBA Commercial Const. Inc. v. Roy J. Hannaford Co., Inc.* 1991 OK 87, ¶13, 818 P.2d 469.

5. *Wille v. Geico Casualty Co.*, see note 4, supra; *Allied Fidelity Ins. Co. v. Bank of Oklahoma*, 1995 OK 36, ¶7, 894 P.2d 1101, *Samuel Roberts Noble Found., Inc. v. Vick*, see note 3 at ¶7, supra.

6. *Colbert v. World Pub. Co.*, 1987 OK 116, ¶6, 747 P.2d 286.

7. *Padon v. Sears, Roebuck & Co.*, 186 W.Va. 102, 411 S.E.2d 245, 247 (1991)(False complaint filed were not learned of until arrest.); *Staheli v. Smith*, 548 So.2d 1299, 1302 (Miss.1989)(Derogatory comments placed in teachers file by Dean were secretive or inherently undiscoverable.); *Kelley v. Rinkle*, 532 S.W.2d 947, 948–49 (Tex.1976)(Credit report.); *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 61 Ill.2d 129, 334 N.E.2d 160 (1975)(Credit report.); *Jones v. Pinkerton's Inc.*, 700 S.W.2d 456, 458–59 (Mo.App.1985)(Investigative report

given to employer.); *Sears, Roebuck & Co. v. Ulman*, 287 Md. 397, 412 A.2d 1240, 1243 (Md.App.1980)(Credit report); *White v. Gurnsey*, 48 Or.App. 931, 618 P.2d 975, 977(1980)(Libelous confidential memo in personnel file .); *Kittinger v. Boeing Co.*, 21 Wash.App. 484, 585 P.2d 812, 814 (1978)(Confidential business memorandum.); See generally, Annot. "Limitation of Actions: Time of Discovery of Defamation as Determining Accrual of Action," 35 A.L.R.4th 1002 (1985). See also, *Hobson v. Coastal Corp.*, 962 F.Supp. 1407, 1410 (D.Kan.1997)(Limitations for defamation action based on oral statement regarding individual's employment history does not begin to run until discovery.); *Goodman–Herron v. Advanced Nav. & Positioning Corp.*, 940 F.Supp. 281 (D.Or.1996)(Discovery rule applied to confidential oral publications made to friends, family and co-workers.); *Thurston v. Ballinger*, 884 S.W.2d 22, 26 (Mo.App.1994)(Discovery rule applied to statements made to FBI agent during nominee loan investigation.). But see, *Martinez v. National Broadcasting Co.*, 877 F.Supp. 219, 232 (D.N.J.1994)(Discovery rule does not apply to defamation actions where statute provides 1 year after publication.); *L. Cohen & Co., Inc. v. Dun & Bradstreet, Inc.*, 629 F.Supp. 1425, 1427 (D.Conn.1986)(Discovery rule inapplicable to credit report where limitation period runs from date act complained of occurs.); *McCutcheon v.*

applied to libel actions involving alleged defamatory reports filed with credit agencies;[8] alleged defamatory statements placed in employees' personnel files;[9] and alleged defamatory statements made in confidential business memoranda.[10] In these circumstances, the discovery rule is applied because the type of publication is not one in which a plaintiff would ordinarily have reason to suspect or even be presumed to know about—given the short limitations period for libel actions.[11]

¶ 21 The facts here suggest that the alleged defamatory letters are similar to the confidential or secretive publications which typically fall within the discovery rule. The Commissioners specifically requested information from Information Builders regarding Digital's performance, and Information Builders was told not to disseminate the information contained in the February 1991, letters to anyone other than Commissioners' computer director. This request was made even though Information Builders was hired to review Digital's work and provide input to Digital. Ultimately, Digital did not discover the letters until it learned of its contract termination and consequently made an open-records request.

¶ 22 This Court has allowed the use of the discovery rule in a variety casesall of which involved situations in which the injury was concealed from the plaintiff or the injury

---

*State,* 746 P.2d 461, 467 (Alaska 1987)(Discovery rule not applicable to press release, it only applies when publication is inherently undiscoverable.); *Wagner v. Flanagan,* 629 So.2d 113, 114 (Fla.1993)(Based on statute, rule does not apply even where defamation is private.); *Brewer v. Schacht,* 235 Ga.App. 313, 509 S.E.2d 378, 383 (1998)(Rule not applied to comments made at open meeting.); *Ellert v. Lutz,* 930 S.W.2d 152, 156 (Tex.App.1996)(Rule not applicable to memo in personnel file where employee had access to file.); *Taylor v. Goldsmith,* 870 P.2d 1264, 1265 (Co.App.1994)(Rule not applied to false statements to employer.); *McGovern v. Cargill, Inc.,* 463 N.W.2d 556, 557 (1990)(Refused to apply to defamatory materials placed in corporate file.); *Clark v. AiResearch Mfg. Co.,* 138 Ariz. 240, 673 P.2d 984, 986 (1983)(Rule not applicable when plaintiff was led to believe that negative things were being said about him.).

A few courts appear to have applied the discovery rule without qualification. Although the cases did not involve information that was publically disseminated, the courts used broad language, suggesting that the application of the discovery rule was not limited to circumstances. See, *Allen v. Ortez,* 802 P.2d 1307, 1313 (Utah 1990)(In libel cases, limitation period does not begin to run until the libel is known or is reasonably discoverable by the plaintiff.); *Hoke v. Paul,* 65 Haw. 478, 653 P.2d 1155, 1159 (1982)(A claim for defamation accrues when the defamee discovers or reasonably should have discovered the publication of the defamation.); *Burks v. Rushmore,* 534 N.E.2d 1101, 1103 (Ind.1989) (Limitations period begins to run when resultant damage is ascertained or ascertainable by due diligence.); *Manguso v. Oceanside Unified School Dist.,* 152 Cal.Rptr. 27, 88 Cal.App.3d 725 (1979)(Making no determination as to whether the facts necessitated the discovery defense to the statute of limitation, it held that the rule applies to libel actions.).

However, a few other courts have, under particular circumstances, adhered to the traditional rule that libel and slander actions accrue at the time of publication, See, *Mikaelian v. Drug Abuse Unit,* 501 A.2d 721, 724 (R.I.1985)(Where pleading did not make mention of the date of discovery, but only date of writing and publication.); *Lathrop v. McBride,* 209 Neb. 351, 307 N.W.2d 804, 806 (1981)(Limitations period not tolled where 11 days after publication plaintiff knew that derogatory statements had been made.) *Jones v. City of Folly Beach,* 326 S.C. 360, 483 S.E.2d 770, 774 (1997)(1997)(South Carolina has not adopted the discovery rule in libel and slander cases.). See also, *Lyons v. Farmers Ins. Group of Companies,* 67 Ohio App.3d 448, 587 N.E.2d 362, 363 (1990)(Discovery rule would not be adopted for slander actions). A few other courts appear to require fraudulent concealment. *Lashlee v. Sumner,* 570 F.2d 107, 109–110 (6th Cir.1978)(Applying Kentucky law.); *Atwell v. Retail Credit Co.,* 431 F.2d 1008–1009 (4th Cir. 1970). *Flotech, Inc. v. E.I. Du Pont de Nemours Co.,* 627 F.Supp. 358, 364 (D.Mass.1985)(Discovery rule only applies when inherently unknowable or fraudulently concealed.); *Patterson v. Renstrom,* 188 Neb. 78, 195 N.W.2d 193, 194 (1972).

**8.** *Kelley v. Rinkle,* see note 7, supra; *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.,* see note 7, supra; *Sears, Roebuck & Co. v. Ulman,* see note 7, supra.

**9.** *Staheli v. Smith,* see note 7, supra; *Jones v. Pinkerton's Inc.,* see note 7, supra; *White v. Gurnsey,* see note 7, supra.

**10.** *Kittinger v. Boeing Co.,* see note 7, supra.

**11.** See, e.g., *Kelley v. Rinkle,* note 7, supra; *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.,* note 7, supra; *Sears, Roebuck & Co. v. Ulman,* note 7, supra; *Staheli v.. Smith,* note 7, supra; *Jones v. Pinkerton's Inc.,* note 7, supra; *White v. Gurnsey,* note 7, supra; *Kittinger v. Boeing Co .,* note 7, supra.

was unlikely to come to the attention of the injured party.[12] In *Resolution Trust Corp. v. Grant*, 1995 OK 68, ¶ 8, 901 P.2d 807, the Court recognized:

"... Oklahoma follows the discovery rule allowing limitations in tort cases to be tolled until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury. The rule is applied to delay the running of the statute of limitations. It, much like the doctrine of adverse domination, arises from the inability of the injured, despite the exercise of due diligence, to know of the injury or its cause. The purpose of the rule is to exclude the period of time during which the injured party is reasonably unaware tha[t] an injury has been sustained so that people in that class have the same rights as those who suffer an immediate ascertainable injury...."

We agree with Digital's assertion that the discovery rule should apply to its libel action. The application of the discovery rule is consistent with our prior case law and with the trends in other jurisdictions.

¶ 23 **B. When facts about the injury's discovery are disputed, the question of when the plaintiff knew or should have known is a question of fact for the jury to decide. Nevertheless, under the unique facts presented, submission of the statute of limitations defense to the jury was waived.**

¶ 24 Once it is determined that the discovery rule applies, the question becomes: When did Digital know (or with reasonable diligence should have known) of the alleged libelous statements which gave rise to this lawsuit?[13] Information Builders contends that the discovery rule is inapplicable, and

even if it were applicable there is no reason to submit the question to the jury because the undisputed facts reveal that Digital had explicit notice of a potential defamation claim. In support of its argument, Information Builders alleges that: 1) Digital was aware of Information Builders increasing expanded involvement in the project; 2) after the December 1990, meeting there was significant disagreement between the computer director and Digital regarding the project; 3) at least after the March 1, 1991, memorandum from the computer director, Digital knew that Information Builders had expressed concerns with its work and that it was documenting the concerns; 4) as early as January of 1991, Digital asked Information Builders if it was "trying to take this business"; and 5) Digital could have obtained the letters from the Commissioners earlier.

¶ 25 Digital argues that: 1) Information Builders made the same argument when its motion for summary judgment was denied, its demurrer to the evidence was denied, and finally its motion for directed verdict on its limitations defense was denied; 2) each time, Digital, responded with evidence which would permit a reasonable jury to conclude that its lawsuit was timely filed; and 3) ultimately, at the close of the evidence, Information Builders did not submit its limitations defense to the jury. The gravamen of Digital's argument is that Information Builders' failure to present its statute of limitations defense to the jury constitutes a waiver of the defense. Digital insists that a jury verdict is conclusive as to all disputed facts, and it points to evidence which it offered at trial that would support a jury finding that it did not know or could not have known of the letters until, *at*

---

**12.** See, e.g., *Lee v. Phillips & Lomax Agency, Inc.*, 2000 OK 65, ¶ 9, 11 P.3d 632 (Repair of storm damaged roof.); *Samuel Roberts Noble Found., Inc. v. Vick*, note 3, supra (Malpractice actions involving engineers and architects.); *McVay v. Rollings Constr.*, 1991 OK 102, ¶ 10, 820 P.2d 1331 (Negligence action for the failure of a plumber to reconnect a private sewer line.); *In re 1973 John Deere 4030 Tractor*, 1991 OK 79, ¶ 10, 816 P.2d 1126 (Claim for recovery of stolen property.); *Wade v. Geren*, 1987 OK 81, ¶ 13, 743 P.2d 1070 (Vacate adoption.); *Smith v. Johnston*, 1978 OK 142, ¶ 13, 591 P.2d 1260 (Damage from

the negligent installation of electrical wiring.); *Seitz v. Jones*, 1961 OK 283, ¶ 10, 370 P.2d 300 (Medical malpractice.); *Harper–Turner Oil Co. v. Bridge*, 1957 OK 124, ¶ 5, 311 P.2d 947 (Damage to realty caused from an oil well.); *Continental Oil Co. v. Williams*, 1952 OK 303, ¶ 9, 250 P.2d 439 (Damages to realty caused by pollution of a stream.).

**13.** *Graham v. Keuchel*, 1993 OK 6, ¶ 61, 847 P.2d 342; *Samuel Roberts Noble Found., Inc. v. Vick*, see note 3, supra.

*least*, after March 22, 1991, making its action timely.

¶ 26 Reasonable persons might have reached different inferences or conclusions even from the undisputed facts. From the evidence at trial, the jury could have inferred that Digital, despite the exercise of due diligence, was unaware and could not have been aware of the publication and its resulting injury before March 22, 1991. However, a jury could also have concluded from the evidence that Digital, through the exercise of reasonable diligence, should have known of the publication and discovered it and its alleged injury much earlier, which would have made Digital's libel action untimely.

¶ 27 In *Graham v. Keuchel,* 1993 OK 6, ¶ 61, 847 P.2d 342, we held that the limitations issue must be submitted to the jury when the facts about the injury's discovery are disputed. *Graham* involved a medical malpractice action in which the discovery rule was applicable. The critical determination was whether the plaintiff knew or should have known that she was injured. Because the evidence regarding this issue was conflicting, the question of when the plaintiff knew or should have known was a question of fact for the jury to decide. Pursuant to *Graham,* the question of when the plaintiff knew or should have known was a question of fact and a determination for the jury.[14]

¶ 28 However, this cause presents unique circumstances because the question was not submitted to the jury. No instruction regarding the issue of the statute of limitations was given to the jury or proposed at the trial level; nor were any exceptions made to the exclusion of such an instruction.[15] Additionally, neither party directed any proposition of error regarding such an instruction, or the lack thereof, on appeal. Information Builders concedes that it did not submit the question to the jury because its contention was that the discovery rule is inapplicable and the libel claim is time-barred as a matter of law because the limitation period ran upon publication.[16]

¶ 29 Under the unique facts presented, we agree with Digital that Information Builders waived submission of its defense to the jury. In its answer, Information Builders asserted the statute of limitations defense. However, its sole contention at trial was that the limitations period began to run upon publication as a matter of law. This contention was rejected when the trial court denied Information Builders' demurrer to the evidence and motion for directed verdict.[17] Information Builders alternatively asserted in its trial brief that even if the statute of limitations is tolled until the plaintiff discovers the publication, the claim is nonetheless time barred.[18] However, this was not the defense theory presented to the jury.

¶ 30 Digital provided evidence which would have permitted a reasonable jury to conclude that its lawsuit was timely filed. The burden of proof that an action or claim is time-barred is upon the party asserting the defense.[19] Information Builders called one

---

**14.** *Graham v. Keuchel,* see note 13, supra; See also, *Samuel Roberts Noble Found., Inc. v. Vick,* note 3, supra; *Allen v. Ortez,* note 7, supra; *Burks v. Rushmore,* note 7, supra; *White v. Gurnsey,* note 7, supra.

**15.** We note that consistent with Information Builders' demurrer to the evidence and motion for a directed verdict, it did object to any instructions regarding the libel claim being given at all.

**16.** Additionally, Information Builders contends that after it raised its statute of limitations defense, Digital did not identify the legal issue of whether the plaintiff knew or should have known of the letters in the pretrial order, nor did Digital seek a jury instruction on the issue. However, Information Builders did not complain of the pretrial order below or on appeal, nor did it object to the lack of a jury instruction regarding the issue.

**17.** Digital mentions that Information Builders moved for summary judgment on the limitations issue. We note that the summary judgment motion or any ruling made pursuant to that motion was not included in the record on appeal.

**18.** In its trial brief, IBI argued that: "... Not only was plaintiff present at the time of the first allegedly defamatory utterance (the December 10, 1990 meeting of the CLO Steering Committee) and at the January 18, 1991 meeting, he was told of other, subsequent negative comments about plaintiff's work on March 6, 1991 by Mr. Woodward of the CLO...."

**19.** *MBA Commercial Const. v. Roy J. Hannaford,* see note 5, supra at ¶ 19; *In re 1973 John Deere 4030 Tractor,* see note 12 at ¶ 19, supra (Recognizing the discovery test would require a defendant to bring forth evidence that the plaintiff had an opportunity for discovery.).

witness at trial, and it made no attempt to present evidence to the jury that Digital's claim was untimely. It neither suggested that such evidence would be presented in its opening statements nor did it make the argument to the jury in closing arguments. Information Builders did not request a jury instruction on the issue, nor does it complain on appeal that error occurred because such an instruction was lacking. In short, Information Builders elected not to submit the defense to the jury, but rather to stand on its contention that the limitations period ran upon publication as a matter of law. Because Information Builders failed to submit the issue to the fact-finder, we hold that under the unique facts presented, submission of the defense to the jury was waived.

## II.

¶ 31 SUBMISSION OF THE CONTRACT CLAIM TO THE JURY RESULTED IN PREJUDICIAL ERROR BECAUSE OF THE PROBABILITY THAT THE JURORS WERE MISLED BY ITS INTERMINGLING WITH THE CLAIM FOR LIBEL DAMAGES.

¶ 32 In the trial court, Digital sought damages based upon: 1) Information Builders'

breach of contract to provide peer review services; and 2) Information Builders' tort of defamation which Digital alleged injured its reputation and caused it to lose business of other state agencies.[20] However, Digital sought the majority of its damages through its defamation claim.[21] Although Information Builders did not specifically object to the verdict form used by the trial court,[22] the verdict form reflects that the jury returned a verdict against Information Builders on both claims, but it does not reflect which damages it attributed to which claim. Information Builders asserts that even if a contractual obligation existed between it and Digital, and the contract was breached, Digital failed to prove contractual damages at trial. Therefore, the contract claim should not have been submitted to the jury. Digital argues that there was sufficient evidence for the jury to award contractual damages.

¶ 33 In order to recover on its breach of contract theory, Digital needed to prove: 1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach.[23] We need not address whether a contractual obligation existed or was breached because we agree with Information

20. The transcript of the motion in limine proceeding of March 5, 1998 provides in pertinent part at pp. 13:

"... Had this case—our cause of action is based upon breach of the contract by IBI to provide peer review. We contend that the position they were in as a peer reviewer put them in a fiduciary relationship. We contend that when they breached the contract and that fiduciary relationship with use by seeking the business for themselves, they caused us to lose the contract with the CLO. And, that because of their tort of defamation and libel, they injured our reputation, which caused us to lose business in the market...."

21. The transcript of the motion in limine proceeding of March 5, 1998 provides at pp. 16–17:

"... THE COURT: Ok. Let me make sure I understand, I'm understanding your position: that the bulk of your damages, then, you're claiming from a tort basis, not a breach of contract basis?
MR. SOLOMON: Yes, your Honor...."

22. It appears that Information Builders did not specifically object to the verdict form in the trial

court. On appeal it claims that the verdict form is fatally flawed. In *Rodebush v. Oklahoma Nursing Homes, Ltd.*, 1993 OK 160, ¶9, n. 2, 867 P.2d 1241, we refused to review whether a verdict form was flawed when the issue was not raised by the parties on appeal and the verdict form was not specifically objected to at trial. Here, however, Information Builders objected to any instructions on the contract claim; it raised the issue on appeal; and we have found that prejudicial error occurred in the present cause. Consequently, those cases in which the Court has held that failure to object waives the issue or that it is not reversible error for the trial court to submit separate verdict forms if the verdict form was not objected to prior to the jury's discharge are inapplicable here. See, e.g., *Morgan v. Oklahoma Natural Gas Co.*, 1977 OK 49, ¶ 7, 561 P.2d 1363; *Montgomery Ward & Co. v. Oldham*, 1964 OK 77, ¶ 4–5, 391 P.2d 283.

23. See, Inst. 23.1, Oklahoma Uniform Jury Instructions—Civil; *Gilomen v. Southwest Missouri Truck Center, Inc.*, 737 S.W.2d 499 (Mo.App. 1987); *Rice v. West End Motors, Co.*, 905 S.W.2d 541, 542 (Mo.App.1995)(Damages are an essential element of a claim for breach of contract and must be proved.).

Builders that the trial court erred in submitting the contract claim to the jury.

■ ¶ 34 At trial, Digital presented an expert witness to testify as to the tort damages.[24] The record reflects that Digital presented evidence to prove that, but for Information Builders' tortious actions which resulted in the termination of its contract with the Commissioners, it would have received work from other state agencies. However, to the extent that Digital sought lost net profits for such third party collateral contracts, it was required to show: 1) the loss was within the contemplation of the parties at the time the contract was made; 2) the loss resulted directly or proximately from the breach; and 3) the loss was capable of reasonably accurate measurement or estimate.[25] Digital did not produce evidence establishing that the loss of such profits were in contemplation of Information Builders and Digital at the time they entered into their contract, it did not establish lost net profit damages to a reasonable certainty,[26] and the jury was not instructed regarding this issue.[27]

¶ 35 Although, Digital was also apparently seeking lost net profits which it suffered from the cancellation of the Commissioners' contract, the only evidence relating to this issue was that Digital was to have received the gross contract price of $350,000.00 had it completed the work. No evidence was presented at trial from which the jury could have determined the loss of net profits on the contract with the Commissioners. Because of a pre-trial ruling that the testimony had not been properly disclosed in discovery, the trial court precluded Digital's only witness who would have testified as to such net lost profits.[28]

---

24. Digital's damage expert, testified as to the tort damages and loss of growth of business. The transcript of the motion in limine proceeding of March 5, 1998 provides in pertinent part at pp. 13–14:

"... So, Dr. Horrell will be presenting tort damages as to lost earnings to the company." On cross examination, he admitted that in reaching his opinions he had not attempted to determine the lost profits from the cancellations of the Commissioners' contract.

25. *Florafax Int'l, Inc. v. GTE Market Resources, Inc.*, 1997 OK 7, ¶ 25, 933 P.2d 282.

26. *Florafax Int'l, Inc. v. GTE Market Resources, Inc.*, see note 25, supra. See also, *Groendyke Transport, Inc. v. Merchant*, 1962 OK 32, ¶ 11, 380 P.2d 682; *Morgan v. Underwood*, 1956 OK 4, ¶ 7–8, 292 P.2d 1001. Digital argues that the evidence was sufficient for the jury to conclude that at the time Digital and Information Builders entered into their contract, damages arising from Information Builders breach could be said to have been within the contemplation of the contracting parties as required by *Florafax*, supra. However, it does not direct us to any such evidence in the record.

27. With the exception of punitive damages, the jury was only given two instructions regarding damages. It was instructed that: 1) with regard to any loss of profits that it determined as a result of Information Builders' breach of its contract with Digital, the damages must be based upon the loss of net profits and to the extent they are not, they should be disregarded; and 2) the amount of damages did not have to be proven with mathematical certainty. Jury instruction number 13 provides:

"If you decide for DDG on its claim for breach of contract or on its claim for libel, you must fix the amount of damages. This is the amount of money that is needed to put it in as good as position as it would have been if the contract had not been breached or the libel had not been committed. In this case, the amount of damages should be determined as follows: The amount of corporate profits lost as a result of IBI's breach of that specific contract between IBI and DDG.

The law requires that the damages presented to you must be based upon the loss of net profits. To the extent the Plaintiff's presentation of damages was not based on net profits of Digital, you should disregard it."

Jury instruction number 14 provides:

"In order to award damages to the Plaintiff DDG, you must be satisfied by the greater weight of the evidence that it did, in fact, suffer a loss which was caused by by[sic] the misconduct of the Defendant IBI. Once you are satisfied that Plaintiff did suffer such a loss, you should award damages even if you are uncertain as to the exact amount. The amount of damages does not have to be proved with mathematical certainty, but there must be a reasonable basis for the award."

28. In response to Information Builders' motion in limine, the trial court ruled that Digital's president could not testify concerning lost profits from the Commissioners contract. Information Builders' reiterated its objection during trial and Digital's president was precluded from testifying about the lost contract profits. Digital made an offer of proof, that had the president been allowed to testify, he would have testified that the amount due on the contract, less the amounts paid to date, and less the amount of work ex-

¶ 36 It is error for the trial judge to submit an issue not supported by competent evidence to the jury.[29] However, a jury verdict will not be disturbed because of error in instructing the jury unless the error was prejudicial to the complaining party.[30] The standard of review of a challenged instruction is whether there is a probability that the jurors were misled and thereby reached a different result than they would have reached but for the error.[31]

¶ 37 Although Information Builders does not specifically challenge a particular jury instruction on appeal, the issue is clearly contained within their argument that contract damages were not established and should not have been submitted to the jury. A review of the record reveals that the jury was instructed regarding the general measure of damages. However, neither the instructions nor the verdict form distinguished between contract damages or libel damages.[32] Although the jury found in favor of Digital on its breach of contract claim, it is impossible to tell from the verdict form which damages it attributed to the contract claim and which damages it attributed to the defamation claim, or if the jury based its punitive damages award solely on the defamation claim.[33] The evidence presented at trial was insufficient to support giving instructions on the contract claim, and the trial court erred in submitting Digital's contract theory to the jury. We also find that there is a probability that the jurors were misled and thereby reached a different result than they would have reached but for the error. Clearly, reversible error occurred by the improper intermingling of the contract claim with the claim for libel damages.

## CONCLUSION

[15, 16] ¶ 38 The common law discovery rule in libel actions is applicable when the publication is likely to be concealed from the plaintiff or published in a secretive manner which would make it unlikely to come to the attention of the injured party. The question of when the plaintiff knew or should have known of the alleged libelous statements which gives rise to the cause of action is a critical determination for the jury to decide. Conflicting evidence was adduced at trial regarding this issue. However, the burden of proof that an action or claim is time-barred is upon the party asserting the defense.[34] Because Information Builders neglected to submit the issue to the fact-finder, we hold that under the unique facts presented, submission of the defense to the jury was waived.

¶ 39 The evidence did not establish that the loss of net profits were contemplated by the parties at the time they contracted nor did it establish lost net profit damages to a reasonable certainty.[35] No evidence was presented at trial from which the jury could have determined the loss of net profits on the contract claim. Additionally, it is impossible to tell from the verdict form which damages the jury attributed to which claim. Because the evidence presented at trial was insuffi-

pense that he would be incurring to complete the job would be $98,500.

29. See, *Cauthron v. Goodwin*, 1955 OK 230, ¶ 14, 287 P.2d 893 (Where state of evidence discloses absence of any question for jury, it is duty of trial court to direct verdict upon proper request.); *L.C. Jones Trucking Co. v. Cargill*, 1955 OK 93, ¶ 17, 282 P.2d 753 (An issue presented in pleading, but not in proof, should not be submitted to the jury.).

30. *Eversole v. Oklahoma Hosp. Founders Ass'n*, 1991 OK 80, ¶ 6, 818 P.2d 456; *Tucker v. Colorado Indoor Trap Shoot, Inc.*, 1970 OK 124, ¶ 20, 471 P.2d 912.

31. *Smicklas v. Spitz*, 1992 OK 145, ¶ 14, 846 P.2d 362; *Walker v. City of Moore*, 1992 OK 73, ¶ 6, 837 P.2d 876; *Cimarron Feeders, Inc. v. Tri-County Elec. Coop., Inc.* 1991 OK 104, ¶ 5, 818 P.2d 901.

32. See discussion, footnote 26, supra.

33. We note that jury instruction number 21 reveals that the jury was instructed that if it found for Digital on the libel action and awarded actual damages, it could consider an award of punitive damages not exceeding the amount of actual damages awarded.

34. *MBA Commercial Const. v. Roy J. Hannaford*, see note 4, supra; *In re 1973 John Deere 4030 Tractor*, see note 12, supra.

35. *Florafax Int'l, Inc. v. GTE Market Resources, Inc.*, see note 25, supra. See also, *Groendyke Transport, Inc. v. Merchant*, note 26, supra; *Morgan v. Underwood*, note 26, supra.

cient to support giving instructions on the contract claim, the trial court erred in submitting Digital's contract theory to the jury.

**COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT REVERSED AND REMANDED FOR NEW TRIAL.**

¶ 39 HARGRAVE C.J., KAUGER, SUMMERS, BOUDREAU, WINCHESTER, JJ., concur.

¶ 40 HODGES, J., concurs in result.

¶ 41 LAVENDER, J., concurs in part; dissents in part.

¶ 42 OPALA, J., dissents.

¶ 43 WATT, V.C.J., not participating.